IN RE WILL OF ALBERT MUELLER.

(Filed 3 November, 1915.)

**1. Wills—Caveat—Undue Influence.**

The influence which destroys the validity of a will is a fraudulent influence, controlling the mind of the testator so as to induce him to make a will which he would not have otherwise made, or a substitution of the mind of the person exercising the influence for the mind of the testator.

**2. Same—Trials—Evidence—Questions for Jury.**

In an action to set aside a will for undue influence, evidence thereof is sufficient to be submitted to the jury which tends to show that the testator made the will when at the home of his sister-in-law, when old and in a dying condition of cancer of the liver, giving all of his property to his sister-in-law and her husband, making the latter sole executor, disinheriting his children and revoking a former will made in favor of his children; that the will was made several days before the testator's death and shortly after he came to the home of the beneficiaries thereunder, one of them sending for and paying the attorney who wrote the will, the attorney testifying that the testator directed him to make the will in accordance with the desires of the beneficiaries named therein, who were present at the time; the children of the testator being absent; that there was no evidence that the relationship between the testator and his children was not friendly.

**3. Evidence — Deceased Persons — Interpretation of Statutes — Appeal and Error.**

Objection to testimony under the provisions of Revisal, sec. 1631, as to the communications or personal transactions with a deceased person, cannot be sustained when it appears on appeal that they were not of the prohibited character, that they were in favor of the appellant, and tended to sustain his contention.

*In re* MUELLER'S WILL.

APPEAL by propounders from *Justice, J.,* at the April Term, 1915, of ·COLUMBUS.

Proceeding to caveat the will of Albert Mueller, Sr.

The caveators admitted that the alleged testator had sufficient mental capacity to make a will, but alleged that the execution of the will was procured by undue influence.

The will was signed 14 December, 1913, and Albert Mueller died 21 December, 1913, of cancer of the liver. Three weeks before his death he was moved to the home of Henry Breternitz, where he remained until his death. Henry Breternitz and his wife, Camilla, were not related to him by blood, but Camilla is the sister of his deceased wife. The said Albert Mueller left children surviving him. After being at the home of Breternitz two weeks, the paper-writing was executed giving all of his estate to Henry Breternitz and his wife and leaving Henry Breternitz as his sole executor. The paper-writing devised to Breternitz and his wife a tract of land valued at $2,000 and other real and personal property. It was written by an attorney whose services were paid for by Mrs. Breternitz, and Mr. Breternitz went after the attorney and engaged his services. Albert Mueller did not know the attorney. When the attorney reached the home of Mr. Breternitz he found Mr. Mueller in bed very sick and unable to get up. There was evidence of other circumstances which will be adverted to in the opinion.

The formal execution of the paper-writing was proven, and the propounders requested his Honor to instruct the jury that there was no evidence of undue influence, which was refused, and the propounders excepted. There was a verdict and judgment in favor of the caveators and the propounders appealed.

*Schulken, Toon & Schulken for propounders.*
*MacRackan & Greer and Winston & Biggs for caveators.*

ALLEN, J. The influence which destroys the validity of a will is a fraudulent influence, controlling the mind of the testator so as to induce him to make a will which he would not otherwise have made. It is the substitution of the mind of the person exercising the influence for the mind of the testator. *Wright v. Howe,* 52 N. C., 412; *In re Abee,* 146 N. C., 274.

As said in *In re Everett's Will,* 153 N. C., 85: "Experience has shown that direct proof of undue or fraudulent influence is rarely attainable, but inferences from circumstances must determine it." It is "generally proved by a number of facts, each one of which standing alone may have little weight, but taken collectively may satisfy a rational mind of its existence." It is "said to be that degree of importunity which deprives a testator of his free agency, which is such as he

is too weak to resist, and will render the instrument not his free and unconstrained act. It is closely allied to actual fraud; and, like the latter, when resorted to by an adroit and crafty person, its presence often becomes exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, and the more helpless and secluded the victim, the less plainly defined are the badges which usually denote it. Under such conditions, the results accomplished, the divergence of those results from the course which would ordinarily be looked for, the situation of the party taking benefits under the will towards the one who has executed it, and their antecedent relations to each other, together with all the surrounding circumstances, and the inferences legitimately deducible from them, furnish, in the absence of direct evidence, and often in the teeth of positive testimony to the contrary, ample ground for concluding that fraud or undue influence has been resorted to and successfully employed. *Grove v. Spiker,* 72 Md., 300." 18 A. and E. Anno. Cases, 412.

It is generally recognized that the following circumstances are evidence of undue influence in the execution of a will, and that when combined they are sufficient to support a verdict against the will, and in some jurisdictions several of them, considered separately, are said to raise a presumption of fraud and undue influence:

1. Old age and physical and mental weakness.

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.

3. That others have little or no opportunity to see him.

4. That the will is different from and revokes a prior will.

5. That it is made in favor of one with whom there are no ties of blood.

6. That it disinherits the natural objects of his bounty.

7. That the beneficiary has procured its execution.

The authorities supporting the admissibility of these circumstances on the issue of undue influence are collected and approved and their legal effect discussed in the valuable opinion of *Associate Justice Brown* in the *Everett Will case,* 153 N. C., 85, and *In re Worth's Will,* 129 N. C., 223, and in the text and notes of 40 Cyc., 1154 *et seq.* The evidence introduced by the caveators shows the presence of all these circumstances, and, in addition, there are declarations of the testator sustaining their position.

The evidence tends to prove that the testator was old and in a dying condition of cancer of the liver; that the will was executed seven days before his death; that it disposed of land worth $2,000 and of other real and personal property; that Breternitz and his wife, who were not related by blood to the testator, were the sole beneficiaries, and that

Henry Breternitz, the husband, was the sole executor; that the will disinherited the children of the testator; that it revoked a prior will which gave to Breternitz and his wife $400 and devised the remainder of his property to be equally divided between his children; that it was executed in the home of Breternitz two weeks after he went there, and that during that time other persons had little or no opportunity of communicating with him; that at the time of its execution no one was present except Breternitz and his wife and the attorney who wrote the will, and two witnesses who were called in to sign it after it had been written by the attorney; that Breternitz went after the attorney and that the wife of Breternitz paid him for his services; that the testator did not know the attorney, and the attorney says in his evidence that after he reached the home "I asked him (Mueller) if he had any children, and he said 'Yes; but I want to give my property to Mr. Henry Breternitz and his wife.' I asked him if he had any particular property that he wanted to give to either, but he said 'It did not make any difference to him; that whichever way they wanted it would be satisfactory to him'"; that there is no evidence that the relationship between the testator and his children was not friendly and affectionate.

In our opinion, these circumstances were fully sufficient to justify submitting the question of undue influence to the jury. There are several exceptions to the evidence which we need not consider in detail.

The objection to the evidence of the son is under section 1631 of the Revisal, but it cannot be sustained because it does not appear that he testified to a communication or personal transaction with the deceased, and as appears from the brief of the propounders, it was favorable to them and tended to sustain their contention.

There is

No error.