In re WILL OF JAMES TURNAGE.

(Filed 10 April, 1935.)

1. **Appeal and Error J e—**

Exceptions and assignments of error relating to an issue answered in favor of appellants will be disregarded on appeal, since errors cured by the verdict are not ground for reversal.

2. **Wills D e—**

Testimony of a declaration made by testator four years after the execution of the will to the effect that he had let others take advantage of him, and lead him to make the will, is insufficient, standing alone, to be submitted to the jury on the issue of undue influence.

3. **Same—Definition of "undue influence."**

Undue influence sufficient to avoid an instrument is such influence which destroys the free agency of the person executing the instrument and substitutes therefor the will of another, and although moral turpitude is not a necessary element of undue influence, where influence exerted upon the person executing the instrument amounts to a substitution of wills and constrains the person executing the instrument to do what he or she otherwise would not have done, it is a fraudulent influence in the eyes of the law.

APPEAL by propounders from *Parker, J.,* at September Term, 1934, of PITT.

Issue of *devisavit vel non,* raised by a caveat to the will of James Turnage, late of Pitt County, based upon alleged mental incapacity and undue influence.

The paper-writing propounded as the last will and testament of the deceased was executed 9 October, 1928. It was prepared by counsel and duly attested. The caveator, testator's only son, is given $25 in the first item in the will, "and this is to be all he is to have out of my estate." The testator died in December, 1932. About a week before his death, he was heard to say he wanted to change his will. He asked the deputy clerk of the court if he would run over to Winterville in a day or two and make a little change in his will for him. This was on Saturday preceding his death on Wednesday. On Monday intervening, the testator went to the home of Glasco Baker "and was speaking about them not having come to fix the will, and he said that his time had

come and he had to go away from here, and he burst out crying, and he said he didn't have but one child in the world and he had cut him clear out, and he wanted him to have what he had." Mrs. Baker asked: "Mr. Turnage, why did you treat him that way?" He answered: "I let other folks take advantage of me and lead me to make the will."

Motion for nonsuit, or directed verdict, on the issue of undue influence. Overruled; exception.

The jury returned the following verdict:

"2. Was the execution of said paper-writing procured by the exercise of undue influence over James Turnage? Answer: 'Yes.'

"3. Did James Turnage, at the time of the execution of said paper-writing by him, have sufficient mental capacity to make a will? Answer: 'Yes.' "

Judgment on the verdict, from which the propounders appeal, assigning error.

*Julius Brown for caveator.*
*S. O. Worthington and J. B. James for propounders.*

STACY, C. J. The issue of testamentary capacity was answered in favor of the propounders, hence the exceptions and assignments of error addressed to this issue may be disregarded. Errors cured by the verdict are not ground for reversal on appeal. *Daniel v. Power Co.,* 201 N. C., 680, 161 S. E., 210; *Rankin v. Oates,* 183 N. C., 517, 112 S. E., 32.

We agree with propounders that the evidence was not such as to warrant a verdict for caveator on the issue of undue influence, and the jury should have been instructed accordingly. *Evans' Will case,* 123 N. C., 113, 31 S. E., 267. The case, in this respect, rests upon the bare declaration of the testator, made four years after the execution of his will, that he had let others take advantage of him, and lead him to make the will. There is nothing to show what "advantage" was taken of the testator, and for aught that appears, the will was written as he wanted it at the time. He expressed no desire to revoke the will, which he might have done, but simply that he wanted to make a change in it. *In re Hurdle,* 190 N. C., 221, 129 S. E., 589; *In re Creecy,* 190 N. C., 301, 129 S. E., 822.

To constitute "undue influence," within the meaning of the law, there must be something operating upon the mind of the person whose act is called in judgment, of sufficient controlling effect to destroy free agency and to render the instrument, brought in question, not properly an expression of the wishes of the maker, but rather the expression of the will of another. "It is the substitution of the mind of the person exercising the influence for the mind of the testator, causing him to make a will which he otherwise would not have made."

In short, undue influence, which justifies the setting aside of a will, is a fraudulent influence, or such an overpowering influence as amounts to a legal wrong. *In re Mueller's Will,* 170 N. C., 28, 86 S. E., 719; *Plemmons v. Murphey,* 176 N. C., 671, 97 S. E., 648; *In re Craven's Will,* 169 N. C., 561, 86 S. E., 587. It is close akin to coercion produced by importunity, or by a silent, resistless power, exercised by the strong over the weak, which could not be resisted, so that the end reached is tantamount to the effect produced by the use of fear or force. To constitute such undue influence, it is not necessary that there should exist moral turpitude, but whatever destroys free agency and constrains the person, whose act is brought in judgment, to do what is against his or her will, and what he or she otherwise would not have done, is a fraudulent influence in the eye of the law. *In re Lowe's Will,* 180 N. C., 140, 104 S. E., 143; *In re Abee's Will,* 146 N. C., 273, 59 S. E., 700.

New trial.