IN THE MATTER OF THE WILL OF ANNIS S. KEMP.

(Filed 21 November, 1951.)

**1. Wills § 21c—**

To constitute undue influence which will vitiate a will it is necessary that the mind of testator be overpowered by the influence of another amounting to restraint akin to coercion, so that the instrument does not express the intent of the maker but rather that of the person exerting the influence.

**2. Wills § 23c—**

Testatrix lived with her brother until his death, and was the beneficiary of his will. Her will was executed some thirteen days after his death and testatrix lived more than three years after its execution without intimation that its terms were not in accord with her wishes. The only

evidence of undue influence was testimony of her statements that she and her brother had discussed their affairs and decided that they were going to leave their property for the benefit of orphan children of the county. *Held:* There was no sufficient evidence of undue influence on the part of testatrix' brother to require the submission of the issue to the jury.

**3. Wills § 25—**

A charge placing the burden upon propounders to show conjunctively the absence of each of the essential elements of testamentary capacity must be held for error, since it suffices if they negative any one of such essential elements.

**4. Same: Appeal and Error § 39f—**

Error in placing the burden upon caveators to show conjunctively the absence of each of the essential elements of testamentary capacity *held* not cured by contextual construction with another portion of the charge correctly defining testamentary capacity, since upon this record the erroneous instruction was repeated in the last part of the charge and caveators had undertaken to show that testatrix was lacking in single, specific elements of mental capacity to make a will.

APPEAL by caveators from *Bennett, Special Judge,* and a jury, at July Term, 1951, of RANDOLPH.

Issue of *devisavit vel non* decided in favor of propounder on the question of testamentary capacity of the testatrix, Annis S. Kemp.

The testatrix was unmarried. She lived most of her adult life with her brother, David J. Kemp, at the "old Kemp Home" on Highway No. 902 about four miles from Asheboro. David had been married, but lost his wife in childbirth. The child did not survive. Thereafter the testatrix and David lived together until his death. He died 8 December, 1945, leaving a will by which substantially all of his property was given to the testatrix. It is also in evidence that she received from him during his lifetime personal property of substantial value. The challenged will was made by Annis S. Kemp 21 December, 1945, thirteen days after the death of her brother David. By the terms of the will all of her property is devised and bequeathed "to the Trustees of Randolph County Hospital, Asheboro, N. C. for the use, benefit, and treatment of orphan children under twenty-one years of age" . . . The will contains this further recital: "it being my desire and purpose in making this will to carry out the wishes of my deceased brother, D. J. Kemp, to give our property to the use and benefit of the unfortunate orphan children of Randolph County who need medical care and hospital treatment."

Soon after making the will on 21 December, 1945, the testatrix acquired and moved to a house in Asheboro, where she resided until shortly before her death. She died in the Randolph County Hospital 8 January, 1949, at the age of sixty-nine, leaving a gross estate in lands, mortgage notes, and other property, valued at about $40,000. She was survived by

a brother, age seventy-four, and a number of descendants of deceased sisters, among whom are the caveators.

The evidence bearing on the issue of mental capacity is sharply in conflict. The caveators offered evidence tending to show that the testatrix suffered a stroke of facial paralysis sometime prior to the death of her brother David; and that she suffered and died from carcinoma, that is, cancer in the late stage; that she was feeble and weak in body and mind; that she did not know what property she owned, particularly the nature and extent of the property received from her brother and his estate; that she suffered with delusions that she was extremely poor and unable to buy the bare necessities of life; that without cause she lost her esteem for her close relatives and became suspicious of some of them; that she had no definite or fixed idea of how she wanted to dispose of her property; that she did not know she had executed a will; that often she made varying statements as to how and to whom she intended to leave her property.

The propounder, on the other hand, offered evidence tending to show that the testatrix was an alert, intelligent woman; that her paralysis affected only the muscles of her face and not her mental faculties, and soon cleared; that while she died of cancer, she was entirely "clear-minded" until a few days before her death; that she attended to her household duties, bought her own groceries, knew how to conduct her business affairs, made loans of money on mortgages, appraised the real estate offered as security, turned down questionable applications, and closed only sound loans, collected her notes and rents, attended to the settlement of her brother's estate with care and precision, and looked after herself and her property with frugal care and discriminating judgment; that she knew what property she owned and what she wanted to do with it; that she knew and recognized and had due regard for her close relatives, but simply chose to leave none of her property to them.

The jury returned the following verdict:

"1. Was the paper writing dated December 21, 1945, and offered for probate as the last will and testament of Annis S. Kemp, executed according to law? Answer: Yes.

"2. Did Annis S. Kemp, at the time of the execution of said paper writing, lack sufficient mental capacity to make a will? Answer: No.

"3. Is said paper writing, dated December 21, 1945, as propounded, and each and every part thereof, the last will and testament of Annis S. Kemp, deceased? Answer: Yes."

The caveators tendered an issue of undue influence, but the court refused to submit it.

From judgment upon the verdict, the caveators appealed, assigning numerous errors.

*Ottway Burton and Larry T. Hammond for caveators, appellants.*
*H. R. Anderson and H. M. Robbins for propounder, appellee.*

JOHNSON, J.    The trial court properly refused to submit the issue of
undue influence.    Here, the caveators contend it was shown by the evi-
dence that the testatrix in making the will was unduly influenced by her
brother David J. Kemp, who died 13 days before the will was made.
It is not suggested that any one except David unduly influenced the testa-
trix.    The caveators rest this exception solely on the theory of the post-
humous continuation of undue influence allegedly exerted by the brother
during his lifetime.    In effect, the caveators contend that the hand from
the grave reached up and wrote the will.

Conceding, but not deciding, that there is no sound reason why upon
proof of the exertion of undue influence it may not be shown to have
continued to operate in a controlling manner on the mind of the victim
after the death of the person alleged to have exercised it (*Penniston v.
Kerrigan,* 159 Ga. 345, 125 S.E. 795; *Trust Co. of Ga. v. Ivey,* 178
Ga. 629, 173 S.E. 648; 13 N. C. Law Rev. 268.   But compare *Henderson
v. Jackson,* 138 Iowa 326, 111 N.W. 821), even so, on this record there is
no showing of undue influence on the part of the deceased brother David
J. Kemp.

To constitute undue influence, within the meaning of the law, as stated
by *Stacy, C. J., in In re Will of Turnage,* 208 N.C. 130, 179 S.E. 332,
"there must be something operating upon the mind of the person whose
act is called in judgment, of sufficient controlling effect to destroy free
agency and to render the instrument, brought in question, not properly
an expression of the wishes of the maker, but rather the expression of the
will of another.    'It is the substitution of the mind of the person exer-
cising the influence for the mind of the testator, causing him to make a
will which he otherwise would not have made.'

"In short, undue influence, which justifies the setting aside of a will,
is a fraudulent influence, or such an overpowering influence as amounts
to a legal wrong. . . . It is close akin to coercion produced by impor-
tunity, or by a silent, resistless power, exercised by the strong over the
weak, which could not be resisted, so that the end reached is tantamount
to the effect produced by the use of fear or force.    To constitute such
undue influence, it is not necessary that there should exist moral turpi-
tude, but whatever destroys free agency and constrains the person, whose
act is brought in judgment, to do what is against his or her will, and what
he or she otherwise would not have done, is a fraudulent influence in the
eye of the law. . . ." (208 N.C., pp. 131 and 132).    See also: *In re
Ball's Will,* 225 N.C. 91, 33 S.E. 2d 619; *In re Evans' Will,* 223 N.C.
206, 25 S.E. 2d 556; *In re Harris' Will,* 218 N.C. 459, 11 S.E. 2d 310;

*In re Turnage's Will,* 208 N.C. 130, 179 S.E. 332; *In re Hurdle's Will,* 190 N.C. 221, 129 S.E. 589.

There is no evidence that David J. Kemp during his lifetime said or did anything to the testatrix which might be construed as amounting to an overpowering influence or as tending in any way to coerce her actions or destroy her free will. In fact, aside from the recitals in the will, the only evidence in the record that she ever discussed with her brother David the making of a will is the testimony of the attorney who drew the will. He said she told him "she and her brother had often discussed their affairs and that they had decided that they were going to give their property to the orphan children of the county, and they thought that the Randolph Hospital could better administer it, and that she wanted to carry out her wishes and the wishes of her brother." Besides, the record indicates that the testatrix lived more than three years after the will was made. Yet there is no evidence that she ever intimated any discontent with the will or suggested that its terms were not in accord with her wishes.

It follows, therefore, that the assignment of error based on the refusal of the court to submit the issue of undue influence may not be sustained.

However, there appears to be substantial merit in the caveators' exceptive assignments to the charge of the trial court as to the burden of proof on the issue of mental capacity. In fixing the burden of proof on this issue the court instructed the jury as follows:

"In connection with the second issue, the burden of proof thereon rests upon the caveators to satisfy the jury by the greater weight of the evidence that at the time the said Annis S. Kemp signed and executed said paper writing that she was incapable by reason of her mental incapacity to know and comprehend the nature, character and extent of her property, who were the natural objects of her bounty, how she was disposing of her property, and the effect of such disposition upon her estate."

It thus appears that the court placed on the caveators the burden of showing that the testatrix was lacking in all of the essential elements of testamentary capacity; whereas, to establish testamentary incapacity, it suffices to negative only one of the essential elements of testamentary capacity.

True, the court thereafter instructed the jury that a person has capacity to make a will when he possesses "mind sufficient (1) to understand without prompting the business about which he is engaged when his will is executed; (2) the kind and extent of the property to be willed; (3) the persons who are the natural objects of his bounty; and (4) the manner in which he desires the disposition of his property to take effect, and the effect which the disposition of the property would have upon his estate."

This would seem to be a satisfactory statement of the essential elements of testamentary capacity (*In re Rawlings' Will,* 170 N.C. 58, 86 S.E.

794; *Bost v. Bost,* 87 N.C. 479; *In re Will of Tatum,* 233 N.C. 723, 65 S.E. 2d 351; *In re Will of York,* 231 N.C. 70, 55 S.E. 2d 791; 57 Am. Jur., Wills, Sec. 64), and if nothing further to the contrary appeared, it might be assumed that upon a contextual interpretation of the foregoing portions of the charge, the error in fixing the burden of proof in the conjunctive rather than in the disjunctive might be treated as harmless. However, it is observed that the erroneous instruction was twice repeated, with the court in its final summation telling the jury in effect that the burden was on the caveators to show that the testatrix was lacking in all of the essential elements of testamentary capacity, this last instruction being as follows:

"If the caveators have satisfied you from the evidence and by its greater weight that on the date of the execution of the purported will of Annis S. Kemp that she lacked or did not have sufficient mental capacity to know the nature and extent of her property, its value, who were the natural objects of her bounty, and the force and effect of the disposition of her property by will, in that event you would answer the issue Yes. If the caveators have failed to so satisfy you, the burden resting upon them, then you would answer the issue No."

Thus, upon consideration of the whole charge, it would seem that the caveators were unduly burdened in overcoming the presumption of testamentary capacity.

We have not overlooked the decision in *In re Will of Efird,* 195 N.C. 76, 141 S.E. 460, in which similar inexact instructions as to the burden of proof were held not sufficiently prejudicial to warrant a new trial. But the *Efird case* is distinguishable. Upon a contextual construction of the charge in that case, in the light of the theory of the trial, it is apparent that the jury easily understood that the paper writing was not a valid will if any or either of the enumerated elements of testamentary capacity was lacking. Here, a study of the entire charge engenders the impression that the jury likely acted upon the belief that testamentary capacity may subsist even in the absence of one or more of the essential elements thereof. That harm came to the caveators from this appears all the more likely in view of the fact that in the trial of the case,—particularly in cross-examining the propounder's witnesses,—the caveators undertook to show that the testatrix was lacking in single, specific elements of testamentary capacity.

A careful study of the record impels the conclusion that the caveators are entitled to a new trial.

Since the questions raised by the caveators' other exceptive assignments of error may not arise on the retrial, we refrain from discussing them.

New trial.