IN THE MATTER OF THE WILL OF CLAUDIA HESTER WOMACK, DECEASED

No. 8017SC1168

(Filed 21 July 1981)

**1. Wills § 1.3— mental capacity of testator**

    The law in N.C. presumes that every person has sufficient mental capacity to make a valid will, and those persons contesting the will have the burden of proving that the testator lacked the required mental capacity.

**2. Wills § 1.3— mental capacity of testator—requirements**

    A person has sufficient testamentary capacity within the meaning of the law if he comprehends the natural objects of his bounty, understands the kind, nature, and extent of his property, knows the manner in which he desires his act to take effect, and realizes the effect his act will have upon his estate.

**3. Wills § 22— lack of testamentary capacity—insufficiency of evidence**

    Caveators failed to present sufficient evidence of lack of testamentary capacity to survive the propounders' motions for directed verdict where their evidence indicated that testatrix was 89 years old, physically disabled, and dependent upon others to bring her food and take care of her daily hygiene; she was strong willed, proud, and knowledgeable of her family history; the only evidence as to testatrix's lack of understanding of the kind and extent of her property consisted of testimony that a year or two prior to her death she and the sister who managed their affairs were very concerned over the expense of keeping another sister in a nursing home and testimony by a second

cousin that testatrix did not know the nature and extent of her property; but *on cross-examination the second cousin testified that she had never discussed testatrix's business affairs with her and had no way of knowing what testatrix knew about her property.*

**4. Wills § 21.4— undue influence—insufficiency of evidence**

Caveators did not present sufficient evidence of undue influence to survive propounders' motions for directed verdict where caveators presented no evidence of mental weakness; testatrix lived in her own home and had frequent visitors; it was initially at her sister's request and then at her own request that propounders came to stay with her; while the propounders were not direct kin, they were not strangers but had known testatrix most of their lives; testatrix had no close surviving relatives, and more of her first and second cousins supported the will than contested it; the devise to propounders was not a gratuitous one, but was one conditioned upon the rendition of services by propounders; caveators testified that they knew testatrix had to have someone to stay with her but for various reasons none of them could do it; and caveators presented no evidence from which it could be inferred that propounders procured the execution of the will.

ON appeal by propounders from *DeRamus, Judge.* Judgment entered 7 August 1980 in Superior Court, CASWELL County. Heard in the Court of Appeals 26 May 1981.

The testatrix, Claudia Hester Womack, died on 9 February 1980, survived by five first cousins, twenty second cousins and one third cousin. She was the last survivor of a brother and three sisters, none of whom ever married. A paper writing dated 24 November 1979 purporting to be Miss Hester's last will and testament was admitted to probate in common form by the Clerk of Caswell County Superior Court. This paper writing left all of her estate to Willie and Frank Boswell, on the condition that they lived with her and cared for her for the remainder of her life. One of testatrix's first cousins, Floyd N. Strader, filed a caveat alleging that the paper writing was not a valid will because it contained patent and latent ambiguities and therefore was null and void for uncertainty. He further alleged that at the time the alleged will was executed the testatrix lacked testamentary capacity and was under undue influence. In this caveat proceeding, the propounders are Frank and Willie Boswell, the beneficiaries under the will, and three first cousins and five second counsins of the testatrix.

Propounders' motions for a directed verdict on the issues of testamentary capacity and undue influence, made at the close of the caveators' evidence and renewed at the close of all the

evidence, were denied by the trial court. The jury found the paper writing to have been executed by the testatrix in conformance with the requirements of the law for a valid last will and testament, but found that she lacked the necessary mental capacity to make and execute a valid will and that the paper writing was procured by undue influence. From a denial of their motion for judgment notwithstanding the verdict and entry of judgment in accordance with the verdict, the propounders appeal.

*Gwyn, Gwyn & Morgan, by Julius J. Gwyn, for propounder appellants.*

*George B. Daniel and W. Osmond Smith, III for caveator appellees.*

ARNOLD, Judge.

The issues to be determined on this appeal are whether the caveators presented sufficient evidence of lack of testamentary capacity and of undue influence exerted by the Boswells to withstand the propounders' motions for a directed verdict and for judgment notwithstanding the verdict.

[1] The law in North Carolina presumes that every person has sufficient mental capacity to make a valid will. *In re Will of Franks*, 231 N.C. 252, 56 S.E. 2d 668 (1949); 1 N. Wiggins, Wills and Administration of Estates in N.C. § 53 (1964). Those persons contesting the will, therefore, have the burden of proving that the testator lacked the required mental capacity. *In re Will of Brown*, 200 N.C. 440, 157 S.E. 420 (1931).

[2] A person has sufficient testamentary capacity within the meaning of the law if he (1) comprehends the natural objects of his bounty; (2) he understands the kind, nature, and extent of his property; (3) he knows the manner in which he desires his act to take effect; and (4) he realizes the effect his act will have upon his estate. It is sufficient for the caveators to negative only one of these essential elements. *In re Will of Rose*, 28 N.C. App. 38, 220 S.E. 2d 425 (1975), *disc. rev. denied* 289 N.C. 614, 223 S.E. 2d 396 (1976).

[3] The caveators rely on evidence that Miss Hester lacked an understanding of the natural objects of her bounty and of the kind, nature and extent of her property. Considering the evidence

in the light most favorable to the caveators and giving them the benefit of all reasonable inferences arising on the evidence, we find that they did not present sufficient evidence of lack of testamentary capacity to survive the propounders' motions for a directed verdict.

Caveators' evidence indicated that Miss Hester was 89 years old, physically disabled, and dependent upon others to bring her food and take care of her daily hygiene. She was described as strong-willed and proud and knowledgeable of the family history. Following her last surviving sister's death, she was grief-stricken and felt very strongly about staying in her own home. One of the relatives mentioned a nursing home to her shortly after her sister's death and several relatives were generally known to have discussed a nursing home. The record reflects that she enjoyed a good relationship with most of her relatives and that although they knew someone had to stay with her and take care of her, they were not able to do it because of other obligations.

The only evidence as to Miss Hester's lack of understanding of the kind and extent of her property consisted of testimony that a year or two prior to her death she and Miss Willie, the sister who managed their affairs, were very concerned over the expense of keeping another sister in a nursing home; Miss Hester seldom discussed business affairs; she had been confined to her home for several years and the opinion of Edith Chandler, a second cousin, that Miss Hester did not know the nature and extent of her property.

A nonexpert witness who has shown that he has had the opportunity to form a reasonably reliable appraisal of the mental powers of the testator may give his opinion as to whether the testator had sufficient mental capacity to understand the kind, nature and extent of his property. *In re Will of Tatum*, 233 N.C. 723, 726, 65 S.E. 2d 351, 353 (1951). Edith Chandler testified that she believed that Miss Hester knew there was property, but she did not think that Miss Hester had any business dealings about it. She further testified that Miss Hester "knew where the farm stretched out to" but "didn't understand the full value of the land." On cross-examination, however, she admitted that she had never discussed Miss Hester's business affairs with her and had no way of knowing what she knew about her property. In light of

this admission, it is doubtful that Mrs. Chandler's opinion should have been admitted. In any event, even considering this evidence, the caveators' evidence was insufficient to submit the issue of the testator's mental capacity to the jury.

[4]   The propounders also argue that the caveators did not present sufficient evidence of undue influence to survive their motions for a directed verdict. To constitute undue influence within the meaning of the law, there must be more than mere influence or persuasion. For the influence to be undue,

> " 'there must be something operating upon the mind of the person whose act is called in judgment, of sufficient controlling effect to destroy free agency and to render the instrument, brought in question, not properly an expression of the wishes of the maker, but rather the expression of the will of another. It is the substitution of the mind of the person exercising the influence for the mind of the testator, causing him to make a will which he otherwise would not have made.' "

*In re Will of Andrews*, 299 N.C. 52, 261 S.E. 2d 198 (1980), *quoting In re Will of Turnage*, 208 N.C. 130, 131, 179 S.E. 332, 333 (1935). The burden is on the caveator to show by the greater weight of the evidence that the execution of the will was procured by undue influence. *In re Will of Andrews, supra.*

Relying on *McNeill v. McNeill*, 223 N.C. 178, 25 S.E. 2d 615 (1943), the caveators contend that the evidence shows that Frank Boswell acted as Miss Hester's agent and as such he enjoyed a confidential relationship with her which raises a presumption of undue influence and shifts the burden to the propounders to show that no undue influence was asserted.

The evidence shows that just prior to Miss Willie's death Frank Boswell helped her with her bank accounts and other business affairs, and after her death he served as Miss Hester's personal representative at the inventory of Miss Willie's safe deposit box. In addition, the evidence shows that four days after Miss Hester's will was written she renounced the administration of Miss Willie's estate in favor of Frank Boswell. There was no evidence of procurement of the will by him. We find that this evidence is insufficient to show the existence of a confidential relationship and raise a presumption of undue influence.

The burden therefore remains on the caveators to show that the will was procured by undue influence. Factors to be considered include:

"1. Old age and physical and mental weakness;

2. that the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision;

3. that others have little or no opportunity to see him;

4. that the will is different from and revokes a prior will;

5. that it is made in favor of one with whom there are no ties of blood;

6. that it disinherits the natural objects of his bounty;

7. that the beneficiary has procured its execution."

*In re Will of Mueller*, 170 N.C. 28, 30, 86 S.E. 719, 720 (1915).

A *prima facie* case of undue influence consists of evidence presented by the caveators of a sufficient combination of facts, circumstances and inferences from which a jury could find that the testator's will is not the product of his free and unconstrained act, but rather that it is the result of an overpowering influence exerted on the testator sufficient to overcome his free will and to substitute another's will and wishes, so that the testator executes a will that he otherwise would not have executed. *In re Will of Andrews, supra.* When such evidence exists, the case must be submitted to the jury.

Examining the record in light of the seven factors previously listed as relevant to the issue of undue influence, we note that the caveators presented no evidence of mental weakness. Miss Hester lived in her own home and had frequent visitors. It was initially at her sister's request and then at her own request that the Boswells came to stay with her. While the Boswells were not direct kin, they were not strangers but had known the Womack sisters most of their lives. Miss Hester had no close surviving relatives and more of her first and second cousins support the will than contest it. Furthermore the devise was not a gratuitous one, but one conditioned upon the rendition of services by the Boswells. The caveators testified that they knew Miss Hester had

to have someone to stay with her but for various reasons, none of them could do it. They presented no evidence from which it could be inferred that the Boswells procured the execution of the will. We therefore find that the evidence presented at trial was insufficient to submit the question of undue influence to the jury.

The trial court erred in denying the propounders' motions for a directed verdict as to the issues of mental capacity and undue influence.

Reversed.

Judges VAUGHN and BECTON concur.