IN THE MATTER OF THE ESTATE OF STELLA T. FORREST

No. 8315SC24

(Filed 7 February 1984)

**1. Wills § 21.4— undue influence—insufficient evidence**
　　The caveator's evidence was insufficient to be submitted to the jury on the issue of undue influence in the execution of a will where it showed only that testatrix was elderly, weak, unable to comprehend at times, had difficulty communicating and, on occasions, could be "led," and that testatrix had a prior inconsistent testamentary intent, but there was no evidence tending to show that testatrix was subject to the constant association and supervision of the beneficiaries prior to execution of the will, that any beneficiary attempted to control access to the testatrix, that the will is different from and revokes a prior will, that the will was not made in favor of the blood relatives of the testatrix, or that the beneficiaries, either singly or together, procured the execution of the will.

**2. Wills § 22— mental incapacity to execute will—insufficient evidence**
　　The caveator's evidence was insufficient to be submitted to the jury on the issue of mental incapacity of the testatrix to execute a will where it tended to show only that the testatrix was elderly, weak, unable to com-

prehend at times, and had difficulty communicating, but there was no evidence that testatrix did not comprehend the natural objects of her bounty, did not understand the nature and extent of her property, did not know the manner in which she desired her act to take effect, and did not realize the effect her act would have upon her estate.

Judge PHILLIPS dissenting.

APPEAL by propounders from *Clark, Judge.* Judgment entered 27 August 1982 in Superior Court, ORANGE County. Heard in the Court of Appeals 1 December 1983.

The testatrix, Stella T. Forrest, died on 3 December 1978. A will purportedly executed by testatrix on 18 December 1974 was admitted to probate in common form by the Clerk of Superior Court of Orange County on 3 January 1979. On 3 July 1980, William E. Taylor, who is testatrix's nephew, instituted this caveat proceeding alleging that the 18 December 1974 paper writing was not the last will and testament of the testatrix because it was procured by undue influence and because testatrix lacked testamentary capacity at the time the purported will was made.

At the time of her death, testatrix was survived by the following heirs and next-of-kin: a sister, Helen T. Morton; three nieces, Marie M. Cox, Stella M. Llewellyn, and Louise M. Reese (the daughters of Helen T. Morton); and one nephew, caveator William E. Taylor (son of testatrix's deceased brother, Earl Currie Taylor). The relevant provisions of the will provided that the propounders, Helen Morton, Stella M. Llewellyn, Marie M. Cox and Louise M. Reese shall each receive one-fourth shares of testatrix's interest in three parcels of real property, that Helen Morton shall receive the testatrix's residence, that William Taylor shall receive one parcel of real property, and that the remainder of the estate shall be devised to Helen Morton. Prior to testatrix's death, certain parcels of the property devised to William Taylor and Helen Morton were sold and the proceeds used for testatrix's maintenance and medical care. As a result, no property passed to testatrix's nephew under the will.

At the conclusion of the caveator's evidence, the court allowed the propounders' motion for directed verdict upon the issues of testamentary capacity, but denied their motion for directed verdict upon the issue of undue influence. At the conclu-

sion of all the evidence, the court again denied propounders' motion for directed verdict upon the issue of undue influence.

The case was submitted to the jury upon the issues of testamentary formalities, undue influence, and *devisat vel non.* A verdict in favor of the caveator was returned. The propounders' motion for judgment notwithstanding the verdict was denied, as were propounders' motions to set aside the verdict and for a new trial on the issue of *devisat vel non.* From the rulings of the trial court, the acceptance by the court of the verdict and entry of judgment thereon, propounders appeal.

*Newsom, Graham, Hedrick, Murray, Bryson, Kennon & Faison, by Josiah S. Murray, III and Joel M. Craig, for propounder appellants.*

*Maxwell, Freeman, Beason and Morano, P.A., by Robert A. Beason, for caveator appellee.*

JOHNSON, Judge.

The question presented by the propounders' appeal is whether the evidence is sufficient to be submitted to the jury on the issue of undue influence. Caveators have also requested, pursuant to Rule 10(d) of the Rules of Appellate Procedure, that the directed verdict in propounders' favor on the issue of mental capacity be reversed if this Court should determine that a retrial is necessary. For the reasons set forth below, we hold that the trial court erred in denying the propounders' motion for a directed verdict on the issue of undue influence, but correctly allowed the propounders' motion for directed verdict on the issue of testamentary capacity.

To constitute undue influence within the meaning of the law, there must be more than mere influence or persuasion. For the influence to be undue,

"there must be something operating upon the mind of the person whose act is called in judgment, of sufficient controlling effect to destroy free agency and to render the instrument, brought in question, not properly an expression of the wishes of the maker, but rather the expression of the will of another. It is the substitution of the mind of the person exer-

cising the influence for the mind of the testator, causing him to make a will which he otherwise would not have made."

In re Andrews, 299 N.C. 52, 54, 261 S.E. 2d 198, 199 (1980), *quoting In re Will of Turnage,* 208 N.C. 130, 131, 179 S.E. 332, 333 (1935). The burden is on the caveator to show by the greater weight of the evidence that the execution of the will was procured by undue influence. *In re Andrews, supra; In re Womack,* 53 N.C. App. 221, 280 S.E. 2d 494, *cert. denied,* 304 N.C. 391, 285 S.E. 2d 837 (1981). It is often said that no test has emerged by which the sufficiency of the evidence to take the issue of undue influence to the jury may be measured with mathematical certainty. *See In re Will of Beale,* 202 N.C. 618, 163 S.E. 684 (1932). Nevertheless, several factors have been isolated as relevant to the issue of undue influence. They include:

1. Old age and physical and mental weakness.

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.

3. That others have little or no opportunity to see him.

4. That the will is different from and revokes a prior will.

5. That it is made in favor of one with whom there are no ties of blood.

6. That it disinherits the natural objects of his bounty.

7. That the beneficiary has procured its execution.

*In re Andrews, supra; In re Mueller's Will,* 170 N.C. 28, 30, 86 S.E. 719, 720 (1915). The list does not purport to contain all facts and circumstances which might suggest the existence of undue influence, and the caveator need not prove the existence of every factor. However, the caveator must present sufficient evidence to make out a *prima facie* case. *In re Andrews, supra.* The test for determining the sufficiency of the evidence on undue influence is usually stated as follows: "[u]ndue influence is generally proved by a number of facts, each one of which standing alone may have little weight, but taken collectively may satisfy a rational mind of its existence." *In re Will of Everett,* 153 N.C. 83, 87, 68 S.E. 924, 925 (1910). In determining whether the evidence is sufficient to

survive a motion for directed verdict, the court must consider the evidence in the light most favorable to the caveator and give him the benefit of all reasonable inferences arising therefrom. *In re Andrews, supra.*

The caveator's evidence showed that testatrix was about 72 years of age at the time the will was executed in 1974. According to her physician, Dr. Aycock, Mrs. Forrest had suffered from hypertension since before 1956, which became "rather marked" by 1972. Mrs. Forrest also suffered from adult onset diabetes and arteriosclerosis. In 1972 she developed a cerebral thrombosis, and suffered a complete stroke resulting in aphasia—a difficulty in speaking. Her doctor had referred Mrs. Forrest in 1972 to Dr. John Pheiffer, a neurologist at Duke University Medical Center, who described her condition as a language dysfunction without any evidence of difficulty in comprehension. Dr. Pheiffer found Mrs. Forrest in 1972 to be lucid, oriented, and not confused, but frustrated with her difficulty in expressing herself.

In 1973 and 1974, according to Dr. Aycock, Mrs. Forrest's aphasia had improved, although she continued to have difficulty at times in enunciating the correct words to express her thoughts. In addition, after 1973 Dr. Aycock testified that Mrs. Forrest had "periods of waxing and waning; on some occasions she could be led and on other occasions she could not be . . ." As of August, 1974 Mrs. Forrest still had aphasia to some extent, would have periods of "fair lucidity," but "there were times when she would be wrong in her conclusions and her facts."

William Taylor, the caveator, testified that he visited frequently with his aunt, Stella Forrest, beginning in January, 1970. In his visits with Mrs. Forrest in 1974, Mr. Taylor felt that Mrs. Forrest recognized him and responded to questions by indicating "yes" or "no" either verbally or by nodding her head, although she was unable to fully communicate. As the caveator understood Mrs. Forrest's condition, "there were periods of time during which she was lucid and there was [sic], periods of time when there was a lack of lucidity." Mr. Taylor testified further that, "You could ask questions, and you know, she might smile and she might agree, but you just felt like what you said did not register."

Margaret Taylor, the caveator's mother, was Mrs. Forrest's sister-in-law. Mrs. Taylor testified that Mrs. Forrest's physical condition deteriorated after 1973, and that by late 1974, in Mrs. Taylor's opinion, at times Mrs. Forrest was unable to interpret a conversation during a visit. "I felt that at times she knew what I was saying perhaps, but that there was a look . . . I could not understand what she said. It was gibberish . . . I just had chit chat and inconsequential things; and she smiled a lot; but at times her facial expression let me know . . . I knew that she did not interpret what I was saying at all."

The 1974 will provided that each of the propounders were to inherit a one-fourth share in certain "Texas property" owned by the testatrix. Mrs. Taylor testified that the Texas property was left by testatrix's parents to their four children: Mrs. Stella Forrest, her two brothers, Dan Taylor and Earl Taylor (caveator's deceased father) and Helen Morton, testatrix's sister. In 1959, Mr. and Mrs. Earl Taylor borrowed money from Stella Forrest, Dan Taylor and Helen Morton and gave in return a deed of sale for Earl Taylor's interest in the Texas property. Mrs. Forrest told Earl and Margaret Taylor that their interest would be returned to them if the debt were repaid. At some point, Earl Taylor asked whether he could buy back the part of his former property Mrs. Forrest owned apart from the others. Later, Mrs. Forrest told the Taylors that "she was to see in her will that he (Earl) got his part" of the property back. Earl Taylor died in January, 1974. William Taylor testified that he also spoke with his aunt about repurchasing the Texas property in about 1970. According to Taylor, the testatrix told him, "Well, you know, you don't have to worry about that, that it will come to you someday."

Stella Llewellyn, a propounder, was also called as a witness by the caveator. She testified that her husband, Mr. Harvey Llewellyn, made a telephone call to Stella Forrest's attorney, Lucius Cheshire, to inform Mr. Cheshire that testatrix wanted Mr. Cheshire to call her to make arrangements for a meeting concerning her will. Mrs. Llewellyn assumed that the call was made in the summer of 1974. Mrs. Llewellyn was named as attorney-in-fact for testatrix in February, 1975. In this capacity she sold all of Mrs. Forrest's real property in Orange County, including the real property devised by Mrs. Forrest to the caveator. At that time, Mrs. Llewellyn did not know the contents of Mrs. Forrest's will,

and did not learn of the contents of the will until Mrs. Forrest's death in 1976. The real property was sold because Mrs. Forrest came to reside with Mrs. Llewellyn in Virginia in 1976 and later went into a nursing home, and the proceeds of the sale were used solely for Mrs. Forrest's maintenance and medical care. According to the testimony of Mrs. Maude Harris, a relative and neighbor of testatrix, Mrs. Forrest resided in her own home in Efland until 1976.

The propounders called Mr. Cheshire as a witness. Mr. Cheshire could not recall when or by whom he was requested to visit Mrs. Forrest about her will. He testified that despite Mrs. Forrest's speech impediment, he received his information from Mrs. Forrest verbally, and drew the December 1974 will from the notes he took of her instructions. At the time of his visit, only Mr. Cheshire, Mrs. Forrest and two of her companions were present — none of the propounders were in the house. Mr. Cheshire received no information or instructions from any of the propounders, nor was he acquainted with any of the propounders at the time the will was drawn.

[1] We conclude that the caveator failed to present sufficient evidence of undue influence to survive the propounders' motion for directed verdict. Of the seven factors ordinarily to be considered in cases of undue influence, caveators have presented evidence sufficient to demonstrate primarily only one of the factors — that testatrix was elderly, weak, unable to comprehend at times, had difficulty communicating, and, on occasions, she could be "led." This evidence at the most establishes that her weakened mental and physical condition left her vulnerable to the exertion of undue influence, but it is insufficient, standing alone, to prove that it was exerted. *In re Will of Ball,* 225 N.C. 91, 33 S.E. 2d 619 (1945).

The testatrix was not shown to be in the home of any of the will beneficiaries and subject to their constant association and supervision, either together or separately. Rather, testatrix went to live with one of the beneficiaries of the will some 20 months *after* the will was executed. Prior to that time she remained in her own home, where persons other than the beneficiary-propounders assisted her. Again, it was two months *after* the will

was executed that Mrs. Llewellyn began acting as Mrs. Forrest's attorney-in-fact.

There was no evidence presented to the effect that others had little opportunity to see the testatrix, and there is nothing in the record to suggest that Mrs. Llewellyn or any of the other beneficiaries attempted to control access to the testatrix.

The record is devoid of any evidence tending to show that the 1974 will is different from and revokes a prior will. There was no evidence of the existence of a prior will. The caveator argues that there was evidence of a prior inconsistent testamentary intent in that testatrix had previously indicated that caveator would receive an interest in the Texas property, but the 1974 will made no provision for such a bequest. Assuming *arguendo* that for purposes of establishing undue influence, evidence of a prior inconsistent testamentary intent is substantially equivalent to the revocation of a prior inconsistent will, the evidence as a whole nonetheless fails to demonstrate that the 1974 will was the product of any one or all of the beneficiaries' exertion of control over the testatrix sufficient to destroy her free agency and render the instrument in question the expression of the will of someone other than Stella Forrest.

The 1974 will was not made in favor of one with whom there are no ties of blood. Rather, the will made provision for all of Mrs. Forrest's near relatives. The caveator was effectively disinherited by the *subsequent sale* by Stella Llewellyn, of certain property devised to him under the will, and Mrs. Llewellyn had no knowledge of the contents of the will at the time of the sale. The 1974 will itself does not disinherit the natural objects of the testatrix's bounty, it provides for all of them through specific devises.

Finally, the evidence does not establish that the beneficiaries of the will, either singly or together, *procured* the execution of the will. None of the propounders were present at the conferences which were held between testatrix and Mr. Cheshire. The instructions as to the plan of testamentary disposition were given directly by the testatrix to the will draftsman. The only relevant contact between a beneficiary and the attorney Cheshire was a phone call made by the husband of one of the beneficiaries to inform Mr. Cheshire that Mrs. Forrest wanted to arrange an ap-

pointment for the preparation of a last will and testament. This does not rise to the level of "procurement" of the execution of the will by the beneficiary.

Thus, the evidence, taken in the light most favorable to the caveator, *at most* establishes only two of the seven indicia of undue influence traditionally cited, and, as such, is insufficient to establish that the December 1974 will was not the product of the free and unconstrained will of the testatrix. *In re Andrews, supra. See also In re Coley,* 53 N.C. App. 318, 280 S.E. 2d 770 (1981). The directed verdict in favor of the propounders was, therefore, erroneously denied.

[2] We turn to caveator's cross-assignment of error on the question of testamentary capacity. At the conclusion of the caveator's evidence, the propounders moved for a directed verdict on the issue of testamentary capacity. The trial judge ruled the evidence to be "insufficient as a matter of law to overcome the presumption of capacity or to establish that the testator did not comprehend the natural objects of her bounty . . . or that she did not understand the kind and nature and extend [sic] of her property or that she did not know the manner in which she desired her act to take effect or that she did not realize the effect that her act would have upon her estate. I think it is, the record is totally void as to any evidence as to those matters."

It is well established that the law presumes that every person has sufficient mental capacity to make a valid will, and that those persons contesting the will have the burden of proving that the testator lacked the required mental capacity. *In re Womack, supra.* We have carefully examined the record and conclude that the trial court correctly entered a directed verdict on the issue of testamentary capacity. The record is absolutely devoid of any evidence tending to show that testatrix did not comprehend the natural objects of her bounty, did not understand her property, did not know the manner in which she desired her act to take effect and did not realize the effect her act would have upon her estate. *See In re Womack, supra.*

Reversed in part, affirmed in part.

Judge ARNOLD concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

The careful and able trial judge denied the propounders' motions for a directed verdict and judgment notwithstanding the verdict because he was of the opinion that the evidence raised an issue for the jury. Viewing the evidence in the most favorable light to the caveator, as we are required to do, *In re Andrews*, 299 N.C. 52, 261 S.E. 2d 198 (1980), I believe that the trial judge was correct.

The evidence showed that testatrix was elderly, weak, and exceptionally vulnerable to undue influence. She suffered from a complete stroke, adult onset diabetes, hypertension with cerebral complications, and an occasional aphasia, or inability to express herself or to understand language, caused by hardening of the arteries to the brain. At times she was not lucid, spoke "gibberish," and did not comprehend what was being said to her. These problems existed several months before testatrix made her will, as well as afterwards, and were alleviated somewhat by certain medicines prescribed for her; but when her will was made she had stopped taking her medicine for awhile. Her personal physician testified that on occasion she could be led. The husband of one of the propounders, Mrs. Llewellyn, arranged for an attorney to meet with testatrix and make her will. Just a few weeks later Mrs. Llewellyn obtained a power of attorney and thereafter controlled testatrix's business affairs and property, some of which was sold, including the lot that was to have been devised to caveator.

Caveator and testatrix had a close and loving relationship and she had promised to will to him and his mother some land in Texas. Equitable reasons existed for her doing that, since caveator's parents had lost the land some years earlier in a loan transaction that was given the form of a sale, and each of the several times caveator's parents and caveator tried to get testatrix and the other interested relatives to accept repayment of the loan and to convey the property back, testatrix told them not to worry about it, as she was going to will the property back to

them. Yet despite these promises, apparently made in good faith, testatrix's will devised all the Texas property and nearly everything else to propounders. This was evidence that testatrix's will departed from her earlier settled testamentary intent, and along with the other evidence tends to show that her will was unduly influenced. Though each individual fact by itself may have little probative weight, collectively they support the verdict and judgment appealed from in my opinion. That caveator's evidence does not provide direct proof of undue influence is not fatal, since the nature of undue influence is such that direct proof of it rarely exists. *In re Andrews, supra.*

My vote, therefore, is to affirm the judgment.