IN THE MATTER OF THE WILL OF LEWIS MANLY DURHAM

No. COA09-274

(Filed 3 August 2010)

**1. Appeal and Error— untimeliness of appeal—writ of certiorari—prevention of multiple appeals**

Although caveator failed to timely appeal from a sanctions order, the Court of Appeals exercised its discretion and granted *certiorari* under N.C. R. App. P. 21(a) in order to reach the merits of caveator's challenge. The Court of Appeals prefers to decide appeals on the merits, and caveator's delay actually prevented the Court from having to consider multiple appeals arising from the same basic set of facts.

**2. Jurisdiction— Rule 11 sanctions—caveat—superior court**

The superior court had jurisdiction to hear and decide a sanctions motion made under N.C.G.S. § 1A-1, Rule 11 following the filing of a caveat stemming from the filing of a verified complaint for revocation of letters testamentary following the appointment of two individuals as executors of an estate.

### 3. Wills— revocation petition for letters testamentary— caveat—Rule 11 sanctions—standing

The trial court did not err by imposing sanctions under N.C.G.S. § 1A-1, Rule 11 based on its conclusion that caveator's petition set forth no lawful basis for revocation of letters testamentary. A caveat, and not a revocation petition, is the proper method for challenging the validity of a disputed will once it has been admitted to probate; further, caveator lacked standing to file a revocation petition since he was not entitled to share in decedent's estate under the 20 February 2006 will.

### 4. Wills— caveat—execution—undue influence

The trial court did not err by granting summary judgment in favor of executors in a caveat proceeding on the issues of the execution of the will and undue influence.

Appeal by petitioner and caveator from order entered 10 March 2008 by Judge Donald W. Stephens in Chatham County Superior Court and judgment entered 6 November 2008 by Judge Carl R. Fox in Chatham County Superior Court. Heard in the Court of Appeals 16 September 2009.

*Stark Law Group, PLLC, by Thomas H. Stark and Seth A. Neyhart, for Petitioner/Caveator-Appellant.*

*Levine & Stewart, by James E. Tanner, III, for Respondent/Propounders-Appellees.*

ERVIN, Judge.

Petitioner and Caveator Gary Dixon[1] appeals from an order imposing sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11 stemming from the filing of a Verified Complaint for Revocation of Letters Testamentary following the appointment of Ida Pharr and Frank Durham as executors[2] of the estate of Lewis M. Durham. In addition, Caveator appeals the trial court's order granting summary judgment in favor of Executors concerning the validity of Decedent's will. After

1. Although Mr. Dixon was the petitioner in connection with the revocation petition and the caveator in connection with the caveat proceeding, we will refer to him as Caveator in the interests of simplicity throughout the remainder of this opinion.

2. Although Ms. Pharr and Frank Durham were the co-executors of Decedent's estate for purposes of the revocation proceeding and propounders for purposes of the caveat proceeding, we will refer to them as Executors in the interest of simplicity throughout the remainder of this opinion.

careful consideration of the record in light of the applicable law, we conclude that the trial court's orders should be affirmed.

## I.  Factual Background

On 27 July 1983, Decedent and his wife, Ona Mae Durham, executed mutual and reciprocal wills which provided that, upon the death of either spouse, his or her estate would pass to the surviving spouse. Both wills also provided that, in the event that either spouse died before the other spouse's will became effective, 50% of "any cash on hand," "any cash on deposit," and "any amounts due under any promissory note receivable" would pass to Aldersgate Methodist Church and all remaining real and personal property would pass to Caveator, who was Decedent's adopted grandson.

Caveator claimed that, after Mrs. Durham was diagnosed with cancer, he assisted the couple with dressing, transportation and financial management issues on a daily basis. On 17 February 2006, Mrs. Durham died. According to Caveator, Decedent became very depressed, expressed suicidal thoughts, and became highly susceptible to third party influences following his wife's death. Executors concede that Caveator had a longstanding relationship with the couple and that the same had not been true of them.

On 18 February 2006, Griffin Funeral Home contacted Clarice Jones, sister of Executors and Decedent's niece, to inform her that Caveator had missed several appointments that day regarding Mrs. Durham's funeral arrangements. In response, Ms. Jones telephoned Decedent to apprise him of the situation. During the call, she heard him call out "Help me!" On the following morning, Executors went to investigate the situation, only to discover that Caveator had locked himself in Mrs. Durham's bedroom. Upon entering the residence, Executors found Decedent sitting in his own dried urine. Decedent told Executors that he had not eaten in two days, that he had given Caveator $10,000 to pay for Mrs. Durham's funeral, and that Caveator had failed to make the necessary payment.

After leaving Decedent's residence on 19 February 2006, Propounders initially took Decedent to the hospital. At the hospital, Decedent was described as being oriented and alert despite being in a weak and dehydrated condition. A hospital social worker recommended that Decedent contact an attorney to work out certain power of attorney issues.

On 20 February 2006, Executors took Decedent to his attorney's office. Due to the press of other business, Decedent's attorney referred him to the firm of Levine & Stewart for preparation of a power of attorney and a will. According to the drafting attorney, who met with Decedent out of Executors' presence, Decedent "stated quite adamantly that he wanted to draw up a new Will in order to take his [Caveator] out of his Will." After consulting with the drafting attorney, Decedent executed a new will on 20 February 2006 which revoked all of his prior wills, designated Executors to administer his estate, and bequeathed his estate in equal shares to his eight living nieces and nephews, including Executors.

After Executors took Decedent to the funeral home on 19 February 2006, he never lived in his home again. Instead, he resided in Cambridge Hills in Pittsboro. Caveator was not allowed to see Decedent after 19 February 2006. On 21 September 2007, Decedent died.

On 28 September 2007, Executors successfully presented the 20 February 2006 Will for admission to probate to the Clerk of Superior Court of Chatham County. On 1 October 2007, Caveator filed a petition seeking to have the letters testamentary that had been issued to Executors revoked. On 11 October 2007, Executors filed an Answer to Show Cause and Motion for Sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11. On 18 October 2007, Caveator filed a Response in Opposition to Motion.

On 13 November 2007, Caveator filed a Caveat to Purported Will Dated February 20, 2006 in which he alleged that the 20 February 2006 will was invalid because Decedent lacked sufficient testamentary capacity to execute a valid will on 20 February 2006 and because the 20 February 2006 will resulted from undue influence on the part of Executors. A few minutes prior to the filing of the Caveat, the parties filed a Memorandum of Judgment/Order in which they stipulated that, given the filing of the Caveat, the revocation petition should be dismissed as moot. On 16 November 2007, the Clerk entered an order suspending the administration of Decedent's estate and issued a citation directing all interested parties to appear at the 14 January 2008 session of the Chatham County Superior Court. On 27 February 2008, Caveator filed a Motion for Rule 11 Sanctions seeking sanctions against counsel for Executors due to their failure to withdraw their original sanctions motion.

On 10 March 2008, Judge Stephens entered an Order for Sanctions Pursuant to Rule 11 granting Executors' motion for sanc-

tions against Caveator and denying Caveator's motion for sanctions against Executors' counsel. On 19 September 2008, Executors filed a summary judgment motion directed to the Caveat. On 13 October 2008, Caveator filed a response to Executors' summary judgment motion. On 6 November 2008, Judge Fox entered an order granting Executors' summary judgment motion. On 8 December 2008, Caveator noted an appeal to this Court from both the 10 March 2008 order imposing sanctions and the 6 November 2008 order granting Executors' summary judgment motion.

## II.  Legal Analysis

### A.  Sanctions Order

#### 1.  Standard of Review

N.C. Gen. Stat. § 1A-1, Rule 11 provides, in pertinent part, that:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry that it is well grounded in fact and is warranted by existing law . . . ; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

"There are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose." *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365, *disc. review denied*, 337 N.C. 691, 448 S.E.2d 521 (1994) (citing *Bryson v. Sullivan*, 330 N.C. 644, 655, 412 S.E.2d 327, 332 (1992)). "In analyzing whether the [filing] meets the factual certification requirement, the court must make the following determinations: (1) whether the [party] undertook a reasonable inquiry into the facts and (2) whether the [party], after reviewing the results of his inquiry, reasonably believed that his position was well-grounded in fact." *McClerin v. R-M Industries, Inc.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995) (citing *Higgins v. Patton*, 102 N.C. App. 301, 306, 401 S.E.2d 854, 857 (1991), *overruled on other grounds*, *Bryson*, 330 N.C. 644, 412 S.E.2d 327). "The text of [N.C. Gen. Stat. § 1A-1, Rule 11] requires that whether the document complies with the legal sufficiency prong of the Rule is determined as of the time it was signed." *Bryson*, 330 N.C. at 657, 412 S.E.2d at 334. "To satisfy the legal sufficiency requirement, the disputed action must be warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Dodd*, 114 N.C. App. at 635,

442 S.E.2d at 365 (citing N.C. Gen. Stat. § 1A-1, Rule 11(a), and *Bryson*, 330 N.C. at 656, 412 S.E.2d at 332). Finally, "[t]he improper purpose prong of [N.C. Gen. Stat. § 1A-1,] Rule 11 is separate and distinct from the factual and legal sufficiency requirements." *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337. "An improper purpose is 'any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992) (quoting G. P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 13(C) (Supp. 1992)). "Thus, even if a paper is well grounded in fact and in law, it may still violate [N.C. Gen. Stat. § 1A-1,] Rule 11 if it is served or filed for an improper purpose." *Brooks v. Giesey*, 334 N.C. 303, 315, 432 S.E.2d 339, 345-46 (1993) (citing *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337). The determination of whether a filing was made for an improper purpose "must be reviewed under an objective standard," *Id.* (citing *Turner v. Duke University*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989), *disc. review denied*, 329 N.C. 505, 407 S.E.2d 552 (1991)), with "the relevant inquiry [being] whether the existence of an improper purpose may be inferred from the alleged offender's objective behavior." *Mack*, 107 N.C. App. at 93, 418 S.E.2d at 689 (citing Joseph, *Sanctions* § 13(A) (1989)). "A violation of any one of these requirements mandates the imposition of sanctions under" N.C. Gen. Stat. § 1A-1, Rule 11. *Dodd*, 114 N.C. App. at 635, 442 S.E.2d at 365.

> The trial court's decision to impose or not to impose mandatory sanctions under [N.C. Gen. Stat.] § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue. In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C. [Gen. Stat.] § 1A-1, Rule 11(a).

*Turner*, 325 N.C. at 165, 381 S.E.2d at 714 (1989); *see also Static Control Components, Inc. v. Vogler*, 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002); *Polygenex International, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 249, 515 S.E.2d 457, 460 (1999). "A court's failure to enter findings of fact and conclusions of law on [sanctions] issue[s] is error which generally requires remand in order for the trial court to resolve any disputed factual issues. *McClerin*, 118 N.C. App.

**IN RE WILL OF DURHAM**

[206 N.C. App. 67 (2010)]

at 644, 456 S.E.2d at 355. "The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even when the record includes other evidence that might support contrary findings." *Static Control Components*, 152 N.C. App. at 603, 568 S.E.2d at 308 (citing *Institution Food House v. Circus Hall of Cream*, 107 N.C. App. 552, 556, 421 S.E.2d 370, 372 (1992)). "[I]n reviewing the appropriateness of the particular sanction imposed, an 'abuse of discretion' standard is proper because '[t]he rule's provision that the court 'shall impose' sanctions for motions abuses . . . concentrates [the court's] discretion on the *selection* of an appropriate sanction rather than on the *decision* to impose sanctions.' " *Turner*, 325 N.C. at 165, 381 S.E.2d at 714 (quoting *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C. Cir. 1985) and citing *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 360 S.E.2d 772 (1987)).

## 2. Timeliness of Caveator's Appeal

[1] Before considering Caveator's challenge to the sanctions order, we must first address the timeliness of his appeal. In essence, Executors argue that the sanctions order was entered in response to the filing of the removal petition; that a removal proceeding conducted pursuant to N.C. Gen. Stat. § 28A-9-1 is a separate proceeding from a caveat proceeding conducted pursuant to N.C. Gen. Stat. § 31-32 *et seq.*; that the sanctions order was the final order entered in the removal proceeding; and that Caveator's failure to note an appeal to this Court within the time period set out in N.C.R. App. P. 3(c)(1) deprived this Court of jurisdiction to hear Caveator's appeal from the sanctions order. We agree.

The trial court entered the sanctions order on 10 March 2008. Caveator noted an appeal to this Court from the sanctions order on 8 December 2008. Apparently, Caveator believed that he was not entitled to appeal the sanctions order until the caveat proceeding had concluded. However, as Executors note, the sanctions order was the last decision made in the removal proceeding and constituted a final order which Caveator was required to appeal within the 30-day period specified in N.C.R. App. P. 3. *Long v. Joyner*, 155 N.C. App. 129, 134, 574 S.E.2d 171, 175 (2002), *disc. review denied*, 356 N.C. 673, 577 S.E.2d 624 (2003) (stating that, while "defendant's appeal from the sanction order would [ordinarily] be dismissed as interlocutory," "the underlying legal issues in this case have been resolved by the parties in a settlement agreement," leaving the sanction order "appealed in this case . . . the only unresolved issue in the case and therefore appealable"). As a result, the sanctions order was entered in a sepa-

rate proceeding from the caveat case and could not be challenged as part of an appeal from the trial court's summary judgment order in the caveat proceeding.

According to N.C.R. App. P. 3(c), notice of appeal in a civil action or special proceeding must be filed "within thirty days after entry of judgment if the party has been served with a copy of the judgment within the three-day period prescribed by Rule 58 of the Rules of Civil Procedure" or "within thirty days after service upon the party of a copy of the judgment if service was not made within that three day period." Since 8 December 2008 is much more than 30 days after 10 March 2008 and since the record contains no indication that Caveator filed any sort of motion that would have tolled the running of the 30-day period specified in N.C.R. App. P. 3(c), the only way in which Caveator's notice of appeal could have been timely would have been if there had been a substantial delay in the service of the sanctions order. The record is completely silent, however, as to when, if ever, the sanctions order was served upon Caveator, which precludes us from determining that Caveator noted his appeal from the sanctions order in a timely manner. According to well-established North Carolina law, the record on appeal should "contain a showing of the jurisdiction of the appellate court." *Love v. Moore*, 305 N.C. 575, 582, ftn. 1, 291 S.E.2d 141, 147, ftn. 1 (1982). "The provisions of Rule 3 are jurisdictional, and failure to follow the rule's prerequisites mandates dismissal of an appeal." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008). Given the complete absence of any showing in the record on appeal that Caveator appealed the sanctions order in a timely manner, we have no alternative except to dismiss Caveator's appeal from the sanctions order as untimely.

We do, however, have the authority, in the exercise of our discretion, to treat the record on appeal and briefs as a petition for writ of certiorari pursuant to N.C. R. App. P. 21(a)(1), to grant the petition, and to then review Caveator's challenge to the sanctions order on the merits. *See Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) (holding "that Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner"). Although we have concluded that Caveator failed to note a timely appeal from the sanctions order, there is no question but that he proceeded, albeit mistakenly, in good faith in waiting until the trial court entered a final order in the caveat proceeding before noting his appeal from the

sanctions order. In view of our preference for deciding appeals on the merits, *Dogwood Development*, 362 N.C. at 198-99, 657 S.E.2d at 365, and the fact that Caveator's delay actually prevented us from having to consider multiple appeals arising from the same basic set of facts, we conclude that we should exercise our discretion and grant certiorari pursuant to N.C.R. App. P. 21(a) in order to reach the merits of Caveator's challenge to the sanctions order.

### 3. Applicability of Rules of Civil Procedure

[2] Caveator's initial challenge to the sanctions order rests on a contention that the Rules of Civil Procedure do not apply to estate matters pending before the Clerk, so that the trial court erred by sanctioning him pursuant to N.C. Gen. Stat. § 1A-1, Rule 11. According to Caveator, this Court held in *In re Estate of Newton*, 173 N.C. App. 530, 537-38, 619 S.E.2d 571, 575, *disc. review denied*, 360 N.C. 176, 625 S.E.2d 786 (2005), that:

> While respondent would have us conclude that any estate matter is subject to the Rules of Civil Procedure by virtue of its nature and similarity to a special proceeding, we note that, as detailed above, trustee removal proceedings are held "in an estate matter and *not in a special proceeding or in a civil action.*" N.C. Gen. Stat. § 36A-26.1 (emphasis added). Although Chapter 36A does not expressly or "otherwise" prescribe "differing [rules of] procedure," we are not persuaded that, in addition to the duties already placed upon them, clerks of court must also make decisions regarding discovery and other issues of law arising during estate matters. Instead, we conclude that the clerks of our superior courts hear the matters before them summarily, and are responsible for determining questions of fact rather than providing judgment in favor of one party or the other. Thus, where a clerk of superior court is presented with a petition to remove a trustee, the clerk examines the affidavits and evidence of the parties and determines only whether the trustee is qualified or fit to faithfully discharge his or her duties. The process due to the parties during such a determination, having not been expressly prescribed by statute, is only that which is reasonable when applying general principles of law. *See Edwards v. Cobb*, 95 N.C. 5, 12 (1886) ("The statute conferring power on the Clerk to remove executors and administrators, does not prescribe in terms how the facts in such matters shall be ascertained, but it plainly implies that he shall act promptly and summarily. Applying general principles of law,

the method of procedure we have above indicated, or one substantially like it, is the proper one.")

After noting that a proceeding to remove an executor or administrator of an estate "was not a civil action, but a proceeding concerning an estate matter, which was exclusively within the purview of the Clerk's jurisdiction, and over which the Superior Court retained appellate, not original, jurisdiction," *In re Parrish*, 143 N.C. App. 244, 251, 547 S.E.2d 74, 78, *disc. review denied*, 354 N.C. 69, 553 S.E.2d 201 (2001); that Executors' sanctions motion had been filed while the revocation petition was still pending before the Clerk; and that the issues raised by the revocation petition had been resolved by a Memorandum of Judgment that had been entered with the consent of the parties, Caveator argues that, since this matter had never been appealed to the Superior Court, the trial court never obtained jurisdiction to act on the sanctions motion. We disagree.

The North Carolina Rules of Civil Procedure "govern the procedure . . . in all actions and proceedings of a civil nature except when a differing procedure is prescribed by statute." N.C. Gen. Stat. § 1A-1, Rule 1. The "phrase 'all actions and proceedings of a civil nature' [is] inclusive of, but not exclusive to, civil actions; the phrase is broad and encompasses different types of legal actions, not solely those initiated with a complaint." *In re Estate of Rand*, 183 N.C. App. 661, 663, 645 S.E.2d 174, 175, *disc. rev. denied*, 361 N.C. 568, 650 S.E.2d 601 (2007). According to N.C. Gen. Stat. § 1-393, "[t]he Rules of Civil Procedure and the provisions of this Chapter on civil procedure are applicable to special proceedings, except as otherwise provided." *See also Virginia Electric and Power Co. v. Tillett*, 316 N.C. 73, 76, 340 S.E.2d 62, 65, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986) (stating that, "[e]ven where an action is a special proceeding, the Rules of Civil Procedure are made applicable by N.C. [Gen. Stat.] § 1-393 . . ."). A proceeding for the revocation of previously-issued letters testamentary initiated pursuant to N.C. Gen. Stat. § 28A-9-1 "constitutes a special proceeding." *In re Estate of Sturman*, 93 N.C. App. 473, 475, 378 S.E.2d 204, 205 (1989) (citing *Phil Mechanic Construction Co. v. Haywood*, 72 N.C. App. 318, 321, 325 S.E.2d 1, 2 (1985)). As a result, "an estate proceeding is a 'proceeding of a civil nature' " in which a Superior Court Judge has the authority to impose sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11. *In re Estate of Rand*, 183 N.C. App. at 661, 645 S.E.2d at 175.

Although Caveator's challenge to the trial court's jurisdiction is understandable given certain language that appears in our prior deci-

sions, we conclude that the position advocated by Executors and adopted by the trial court is, on balance, the more persuasive one. We reach this conclusion for several reasons.

First, while *Estate of Newton*, upon which Caveator places principal reliance, clearly states that "trustee removal proceedings are held 'in an estate matter and *not in a special proceeding or in a civil action*'" to which the Rules of Civil Procedure apply and refuses, for that reason, to overturn the Clerk's decision despite the absence of "discovery as well as twenty days to prepare a responsive pleading following the denial of his motions to dismiss," 173 N.C. App. at 537-38, 619 S.E.2d at 575, we do not find *Estate of Newton* controlling for several reasons. First, *Estate of Newton* deals with trustee removal proceedings, while at least one other relevant decision involves a proceeding initiated for the purpose of removing an executor or administrator. As a result, we believe that other decisions are more directly on point than *Estate of Newton* despite the fact that *Estate of Newton* certainly references the removal of executors and administrators. Secondly, *Estate of Newton* does not hold that all components of the Rules of Civil Procedure are irrelevant to trustee removal proceedings; instead, *Estate of Newton* simply held that traditional discovery procedures and the twenty-day period within which a party is allowed to file a responsive pleading following the denial of a dismissal motion were not required in trustee removal proceedings. In other words, *Estate of Newton* does not address the extent to which a remedy for filings that lack an adequate basis in law or fact or which have been filed for an improper purpose should be provided. Thirdly, the statutory provision upon which *Estate of Newton* relies, N.C. Gen. Stat. § 36A-26.1, was repealed effective 1 January 2006. 2005 N.C. Sess. L. c. 192. s. 1. The current statutory provision governing the procedures to be employed in trust-related proceedings contains language that closely tracks that of N.C. Gen. Stat. § 1A-1, Rule 11(a), indicating that relief for the filing of meritless trustee removal petitions is now available. Accepting Caveator's argument, on the other hand, would effectively countenance the filing of frivolous petitions seeking the removal of administrators or executors without any remedy being available for the injured fiduciary, which is not consistent with what we believe to have been the General Assembly's intent. As a result, we do not believe that *Estate of Newton* compels the conclusion that N.C. Gen. Stat. § 1A-1, Rule 11 does not apply in the removal petition context.

Instead of focusing on *Estate of Newton*, we believe that *Estate of Sturman* and *Estate of Rand* are more relevant to the present discussion. As we have already noted, *Estate of Sturman* states that a revocation proceeding is a special proceeding. 93 N.C. App. at 476, 378 S.E.2d at 206. Given that N.C. Gen. Stat. § 1-393 provides that the Rules of Civil Procedure, including N.C. Gen. Stat. § 1A-1, Rule 11, apply in special proceedings, *Estate of Sturman* establishes that relief under N.C. Gen. Stat. § 1A-1, Rule 11, is available in revocation proceedings. Furthermore, without making any mention of *Estate of Sturman* and while citing the very language from *Estate of Newton* upon which Caveator relies, *Estate of Rand* noted "the lack of any authority to suggest the Rules [of Civil Procedure] do not apply to estate proceedings." 183 N.C. App. at 664, 645 S.E.2d at 176. Thus, the weight of authority establishes that relief under N.C. Gen. Stat. § 1A-1, Rule 11, is available in revocation proceedings conducted pursuant to N.C. Gen. Stat. § 28A-9-1.

Finally, Caveator argues that the trial court erred by hearing and deciding the sanctions issue despite the fact the issues raised by the revocation petition had already been resolved and the fact that the Superior Court typically acts in an appellate capacity in estate-related matters. However, according to well-established North Carolina law, the filing of a dismissal does not deprive the trial court of jurisdiction to consider a sanctions motion. *Bryson*, 30 N.C. at 653, 412 S.E.2d at 331 (stating that "[d]ismissal does not deprive the court of jurisdiction to consider collateral issues such as sanctions that require consideration after the action has been terminated") (citing *In re Peoples*, 296 N.C. 109, 146, 250 S.E.2d 890, 911 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979)). Moreover, by the time that the trial court heard the sanctions motion, Caveator had filed a caveat challenging the 20 February 2006 will. Pursuant to N.C. Gen. Stat. § 31-36, upon the filing of a caveat, the "clerk of superior court shall forthwith issue an order that shall apply during the pendency of the caveat to any personal representative, having the estate in charge," suspending the administration of the estate except for the "preserv[ation of] the property of the estate," the "pursu[it] and prosecut[ion of] claims that the estate may have against others," the "fil[ing of] all appropriate tax returns," and the payment of "taxes; funeral expenses of the decedent; debts that are a lien upon the property of the decedent; claims against the estate that are timely filed; professional fees related to administration of the estate, including fees for tax return preparation, appraisal fees, and attorney's fees for estate administration." *See also In re Will of Tatum*, 233 N.C. 723,

729, 65 S.E.2d 351, 355 (1951) (stating that, "[u]nder the provisions of [N.C. Gen. Stat. §] 31-36, the executor is charged with the preservation of the estate pending final determination of the issue raised by the caveat, unless and until he be removed") (citing *Edwards v. McLawhorn*, 218 N.C. 543, 11 S.E.2d 562 (1940); *Elledge v. Hawkins*, 208 N.C. 757, 182 S.E. 468 (1935); and *In re Will of Palmer*, 117 N.C. 133, 23 S.E. 104 (1895)). Furthermore, when the pleadings "raised an issue of *devisavit vel non* and necessitated transfer of the cause to the civil issue docket for trial by jury," "jurisdiction to determine the whole matter in controversy, as well as the issue of *devisavit vel non*, passed to the Superior Court in term." *In re Will of Wood*, 240 N.C. 134, 136, 81 S.E.2d 127, 128 (1954); *see also In re Will of Charles*, 263 N.C. 411, 416, 139 S.E.2d 588, 591 (1965) (stating that, "[w]hen a caveat is filed[,] the Superior Court acquires jurisdiction of the whole matter in controversy"). Based upon these legal principles, we conclude that, given the suspension of the administration of the estate, which is a process necessarily overseen by the Clerk of Superior Court; the necessity for continued supervision over contested estate-related issues by some component of the General Court of Justice; and the fact that the Superior Court has jurisdiction, in the aftermath of the filing of a caveat, over "the whole matter in controversy," *Will of Wood*, 240 N.C. at 136, 81 S.E.2d at 128, the Superior Court was the division of the General Court of Justice with jurisdiction to hear and decide the sanctions motion following the filing of the caveat, so that the trial court did not err by hearing and deciding the sanctions motion.

## 4. Appropriateness of Sanctions Order

[3] The trial court made the following findings of fact in the sanctions order:

1. [Caveator] affirmed by Verified Complaint that [Executors] obtained letters testamentary by falsely representing a purported will to be the genuine last will and testament of [Decedent].

2. Under the terms of this February 20, 2006 Will, the eight living nieces and nephews of [Decedent], including the Co-Executors, inherit equal shares of the estate.

3. Under the provisions of a previous July 27, 1983 Will, [Caveator] was to inherit 50% of the estate, with the other 50% going to Aldersgate Methodist Church.

4. If the Will submitted by Ms. Pharr and Mr. Durham is genuine, [Caveator] and the Church are disinherited. By letter to this Court, the Church has disclaimed any interest in these proceedings.

5. On its face, the 2006 Will appears to be a valid attested written will. It was prepared by the offices of Levine & Stewart, notarized by Patricia F. Clapper, a Notary Public, Certified Paralegal, and staff member of Levine & Stewart. The Will was witnessed by attorney John T. Stewart, and by Catherine L. McLean, who was at that time employed as a receptionist at Levine & Stewart, and is currently a law student attending Wake Forest Law School.

8. [Caveator] affirmed that each of the signatures of [Decedent], appearing on: (1) Resignation of Executor 06 E 296;[3] (2) Inventory for Decedent's Estate 06 E 296; (3) Final Account 06 E 296, and (4) Statement of Receipt of Funds 06 E 296, are not the signatures of [Decedent]. Patricia F. Clapper notarized each of these signatures, just like the signature on the Will. Neither [Caveator] nor any representative of [Caveator] has ever contacted Ms. Clapper with respect to the alleged falsification of her Notary Seal.

9. [Caveator] affirmed that each of the signatures of [Decedent] appearing on the Oath of Executor in 06 E 296 and a General Warranty Deed are not the signatures of [Decedent]. Karen W. Wolfe, a Chatham County Notary Public, notarized these signatures. Neither [Caveator] nor any representative of [Caveator] has ever contacted Ms. Wolfe regarding the alleged falsification of her Notary Seal.

10. [Caveator] affirmed that the Co-Executors, Ida Pharr and Frank Durham, were both disqualified under N.C. Gen. Stat. § 28A-4-2. Neither person was or is so disqualified.

11. [Caveator] affirmed that the Co-Executors violated a fiduciary duty through default or misconduct in the execution of their office, but in fact indicates no such default or misconduct with respect to any actions taken in the execution of their office as Executors. The Complaint instead makes numerous allegations concerning activities prior to the death

---

3. File No. 06 E 296 was the file in which Mrs. Durham's estate was being administered.

**IN RE WILL OF DURHAM**

[206 N.C. App. 67 (2010)]

of [Decedent], including the forgery of all the notarized documents listed hereinabove.

12. [Caveator] affirmed that the Co-Executors have a private interest that would be adverse to fair administration of the [Decedent's] Estate, in that a fair administration would require an accounting of their actions as fiduciaries prior to the death of [Decedent]. Unless the 2006 Will is invalidated, [Caveator] is not a beneficiary of the [Decedent's] Estate entitled to such an accounting. Counsel for the Estate has offered to provide such an accounting upon request to any beneficiary of the 2006 Will.

Based upon these findings of fact, the trial court concluded as a matter of law that:

2. Under the application of N.C. Gen. Stat. § 1A-1, Rule 11, by signing a pleading or other paper, a party certifies that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact, warranted by existing law, and not interposed for any improper purpose. A violation [of] any of these three requirements justifies the Court in awarding sanctions.

3. [Caveator's] affirmations concerning the Will and other notarized documents are not well grounded in fact based upon knowledge, information or belief that was formed as the result of any reasonable inquiry. Neither [Caveator] nor any representative made any inquiry whatsoever that would provide an adequate factual basis to contend the Will and notarized documents were forgeries requiring the falsification of independent witness signatures or Notary Seals, much less the kind of investigation that would support the contention that all of these documents were executed by some sort of imposter.

4. [Caveator's] Complaint was not warranted by existing law; not one of the grounds to revoke letters testamentary was present under 28A-9-1(a).

5. Given the self-serving nature of [Caveator's] attempt to challenge his disinheritance, combined with the fact that his affirmations in the Complaint were not well grounded in fact or warranted by existing law, and were asserted without inquiry, reasonable or otherwise, the Court strongly infers and

hereby concludes that the Complaint was asserted for an improper purpose.

6. [Caveator] has violated each of the prongs of Rule 11, and is subject to sanction by this Court.

7. The Court concludes that it is fair and reasonable to require [Caveator] to reimburse the costs in attorneys fees incurred by virtue of his violation of Rule 11, in the amount submitted by Affidavit of Counsel for the Estate.

Since Caveator has not challenged any of the trial court's findings of fact, they are binding on us for purposes of appeal. *Static Control Components*, 152 N.C. App. at 603, 568 S.E.2d at 308 (stating that "findings of fact to which plaintiff has not assigned error and argued in his brief are conclusively established on appeal") (citing *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998)). As a result, our review of the sanctions order is limited to determining whether the trial court's findings of fact support its conclusions of law and whether its conclusions of law rest on a correct understanding of the applicable statutory provisions.

N.C. Gen. Stat. § 28A-9-1(a) provides that "[l]etters testamentary, letters of administration, or letters of collection may be revoked after hearing on any of the following grounds:

1. The person to whom they were issued was originally disqualified under the provisions of [N.C. Gen. Stat. §] 28A-4-2 or has become disqualified since the issuance of letters.

2. The issuance of letters was obtained by false representation or mistake.

3. The person to whom they were issued has violated a fiduciary duty through default or misconduct in the execution of his office, other than acts specified in [N.C. Gen. Stat. §] 28A-9-2.

4. The person to whom they were issued has a private interest, whether direct or indirect, that might tend to hinder or be adverse to a fair and proper administration. The relationship upon which the appointment was predicated shall not, in and of itself, constitute such an interest.

According to N.C. Gen. Stat. § 28A-9-1(b), the issue of whether letters testamentary should be revoked may be raised by a "verified complaint" filed by "any person interested in the estate."

**IN RE WILL OF DURHAM**

[206 N.C. App. 67 (2010)]

The qualifications required for obtaining or retaining letters testamentary are set out in N.C. Gen. Stat. § 28A-4-2, which provides that:

No person is qualified to serve as a personal representative who:

(1)  Is under 18 years of age;

(2)  Has been adjudged incompetent in a formal proceeding and remains under such disability;

(3)  Is a convicted felon, under the laws of either the United States or of any state or territory of the United States, or of the District of Columbia and whose citizenship has not been restored;

(4)  Is a nonresident of this State who has not appointed a resident agent to accept service of process in all actions or proceedings with respect to the estate, and caused such appointment to be filed with the court; or who is a resident of this State who has, subsequent to appointment as a personal representative, moved from this State without appointing such process agent;

(5)  Is a corporation not authorized to act as a personal representative in this State;

(6)  Repealed by Session Laws 1999-133, s. 1, effective January 1, 2000.

(7)  Has lost his rights as provided by Chapter 31A;

(8)  Is illiterate;

(9)  Is a person whom the clerk of superior court finds otherwise unsuitable; or

(10) Is a person who has renounced either expressly or by implication as provided in [N.C. Gen. Stat. §] 28A-5-1 and 28A-5-2.

The trial court specifically found that neither Ms. Pharr nor Frank Durham was disqualified from serving as a co-executor of Decedent's estate under N.C. Gen. Stat. § 28A-4-2. The only statutory basis for disqualification upon which Caveator relies in challenging the trial court's determination is N.C. Gen. Stat. § 28A-4-2(9), with this contention based on [Frank] Durham's criminal record and "the circum-

stances of the case." However, N.C. Gen. Stat. § 28A-4-2(3) specifically addresses the ability of a convicted felon to serve as a personal representative and allows such a person to do so as long as his or her rights have been restored. The record contains no indication that Frank Durham's rights have not been restored. Furthermore, Caveator made no reference to "the circumstances of the case" in his original revocation petitions as a basis for seeking the revocation pursuant to N.C. Gen. Stat. § 28A-9-1(a)(1). *State v. Sharpe*, 344 N.C. 190, 195, 473 S.E.2d 3, 6 (1996) (stating that "[i]t is well settled in this jurisdiction that [a party] cannot argue for the first time on appeal [a] new ground for admission that he did not present to the trial court"). As a result, the trial court correctly concluded that Caveator's petition set forth no lawful basis for revocation pursuant to N.C. Gen. Stat. § 28A-9-1(a)(1).

Secondly, the record contains no indication that the letters testamentary issued to Executors were "obtained by false representation or mistake." N.C. Gen. Stat. § 28A-9-1(a)(2). In seeking to obtain revocation based upon this statutory provision, Caveator argued in the revocation petition that Executors obtained the issuance of the disputed letters testamentary "by the false representation that the [20 February 2006 will] was the genuine last will and testament of Decedent" and that Executors "falsely stated the known value of the estate, in that they were personally aware of assets exceeding the amount she listed." "The filing of a caveat is the customary and statutory procedure for an attack upon the testamentary value of a paperwriting which has been admitted by the clerk of superior court to probate in common form." *In re Will of Spinks*, 7 N.C. App. 417, 423, 173 S.E.2d 1, 5 (1970). As a result, a caveat, and not a revocation petition, is the proper method for challenging the validity of a disputed will once it has been admitted to probate. In addition, there is no evidence that the increase in the value of the assets in Decedent's estate shown in the filings made by Executors constitutes proof of fraudulent concealment of assets. Furthermore, even if Executors falsely and materially understated the value of the assets in the estate in these filings, there is no basis for believing that any such false and material understatement contributed to the Clerk's decision to issue letters testamentary to Executors. As a result, the revocation petition provides no basis in law for the revocation of the letters testamentary issued to Executors pursuant to N.C. Gen. Stat. § 28A-9-1(a)(2).

Thirdly, the record does not establish any basis for a conclusion that Executors "violated a fiduciary duty through default or miscon-

duct in the execution of [their] office, other than acts specified in [N.C. Gen. Stat. §] 28A-9-2." Although the revocation petition alleges that this ground for revocation exists to the extent that "such assets are no longer property of the estate as a result of [Executors'] embezzlements or mismanagement, or insofar as [Executors] have been attempting to abscond with the assets without listing them with the Court," we understand this allegation to refer to events that Caveator believes to have occurred prior to the issuance of the letters testamentary that Caveator seeks to have revoked. Aside from the fact that Caveator has offered no evidence beyond mere speculation that such acts of "embezzlement or mismanagement" occurred, the acts that Caveator hypothesizes do not constitute "default or misconduct in the execution of [Executors'] office." N.C. Gen. Stat. § 28A-9-1(a)(3). As we have already noted, the mere fact that the value of the assets listed on a later filing was substantially higher than the value of the assets listed on the initial application does not, without more, show any breach of fiduciary duty. As a result, the revocation petition does not adequately allege grounds for revocation pursuant to N.C. Gen. Stat. § 28A-9-1(a)(3).

Fourth, the record does not establish that Executors labored under any sort of "private interest, whether direct or indirect, that might tend to hinder or be adverse to a fair and proper administration . . . ." N.C. Gen. Stat. § 28A-9-1(a)(4). According to Caveator, grounds for revocation pursuant to N.C. Gen. Stat. § 28A-9-1(a)(4) exist because "any fair and proper administration of the estate would require legal action to force [Executors] to account for their acts in their fiduciary capacity to [Decedent] and [Decedent's] estate." The entire basis for Caveator's contention is his unsupported belief that Executors engaged in acts of misconduct with respect to Decedent's property prior to Decedent's death. In the absence of any ability to prove the existence of such acts of misconduct, Caveator cannot establish the necessary "private interest" required to support a request for removal pursuant to N.C. Gen. Stat. § 28A-9-1(a)(4). Thus, this aspect of the removal petition lacks an adequate basis in law as well.

An even more fundamental problem with the filing of the revocation petition is that Caveator lacked standing to file it. A revocation petition may be filed by a "person interested in the estate." N.C. Gen. Stat. § 28A-9-1(b). At the time the revocation petition was filed, the 20 February 2006 will had been admitted to probate. Caveator was not entitled to share in Decedent's estate under the 20 February 2006 will.

As a result, Caveator had no standing to seek to have Executors removed as the co-executors of Decedent's estate at the time that he filed the revocation petition. Thus, although this issue is not specifically mentioned in the trial court's conclusions of law, the revocation petition lacked any basis in law for this reason as well.

Caveator argues that, to the extent that his "counsel may have erred in his analysis of N.C. Gen. Stat. § 28A-9-1(a), such error is the responsibility of [Caveator's] counsel and not Caveator, who relied on the advice and analysis in good faith." Although "good faith reliance on an attorney's advice preclude[s] sanctions against the party under the legal sufficiency prong" of N.C. Gen. Stat. § 1A-1, Rule 11, *Brooks v. Giesey*, 334 N.C. 303, 309, 432 S.E.2d 339, 342 (1993) (citing *Bryson*, 330 N.C. at 662, 412 S.E.2d at 336), the trial court did not find, as it did in *Bryson*, that Caveator acted in good faith in reliance on advice provided by his attorney. Although Caveator's argument might have merit in the event that the record reflected that it had been presented to the trial court, *Taylor v. Collins*, 128 N.C. App. 46, 53, 493 S.E.2d 475, 480 (1997) (holding that an award of sanctions against a litigant were inappropriate where the litigant's counsel "frankly admit[ted] that at all times, [the plaintiff] relied on his advice as to the legal and factual sufficiencies of the action"), we are unable to find any indication that Caveator advanced this claim in the court below. *In re Estate of Peebles*, 118 N.C. App. 296, 301, 454 S.E.2d 854, 858 (1995) (stating that "caveator argues for the first time on appeal that . . . the trial court erred in denying her motion" and that "[b]ecause the trial court never had the opportunity to consider the issue, it is not properly before us on appeal"). As a result, Caveator is not entitled to rely on his "good faith reliance on the advice of counsel" argument on appeal.

Thus, the trial court correctly concluded that the revocation petition was not well-grounded in law. *Jackson v. Jackson*, 192 N.C. App. 455, 467, 665 S.E.2d 545, 553 (2008) (upholding trial court's decision to sanction litigant for filing a motion requiring that the opposing party show cause why she should not be held in contempt when the alleged violations did not justify a finding of contemptuous behavior). Having reached this conclusion, we need not examine whether the trial court correctly concluded that Caveator was subject to sanctions on the grounds that the revocation petition was factually insufficient or filed for an improper purpose and express no opinion on that subject. In addition, since Caveator has not challenged the actual sanction imposed in the trial court's order, we need not consider

whether the trial court erred by ordering Caveator to pay $4,255.75 to Executors' counsel. As a result, for all of the reasons set forth above, the sanctions order is affirmed.

## B.  Summary Judgment Concerning Caveat

[4]  Finally, Caveator appeals from the trial court's order granting summary judgment in favor of Executors in the caveat proceeding. "A caveat is an 'attack upon the validity of the instrument purporting to be a will. The will and not the property devised is the *res* involved in the litigation.' " *In re Will of Mason*, 168 N.C. App. 160, 162, 606 S.E.2d 921, *disc. review denied*, 359 N.C. 411, 613 S.E.2d 26 (2005) (quoting *In re Will of Cox*, 254 N.C. 90, 91, 118 S.E.2d 17, 18 (1961)). Although the caveat filed by Caveator challenged the validity of the 20 February 2006 will on the grounds that Decedent lacked testamentary capacity and that the 20 February 2006 will had been procured by undue influence on the part of Executors, among other things, Caveator's challenges to the trial court's order on appeal are limited to arguments that it erred in granting summary judgment on the execution and undue influence issues.

## 1.  Standard of Review

The extent to which summary judgment is appropriate depends on whether there is any genuine issue of material fact and whether the moving party is entitled to "judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c); *In re Will of Priddy*, 171 N.C. App. 395, 396, 614 S.E.2d 454, 456 (2005). In ruling on a motion for summary judgment, the court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." N.C. Gen. Stat. § 1A-1, Rule 56(c); *In re Will of McCauley*, 356 N.C. 91, 100, 565 S.E.2d 88, 95 (2002). All of the evidence presented for the trial court's consideration must be viewed in the light most favorable to the non-moving party. *NationsBank of North Carolina, N.A. v. Parker*, 140 N.C. App. 106, 108-09, 535 S.E.2d 597, 599 (2000) (citation omitted).

## 2.  Proper Execution

"In a caveat proceeding, the burden of proof is upon the propounder to prove that the instrument in question was executed with the proper formalities required by law." *In re Will of Coley*, 53 N.C. App. 318, 320, 280 S.E.2d 770, 772 (1981). On appeal, Caveator contends that the 20 February 2006 will was admitted to probate as a self-proved will and that the requirements for a valid self-proved will

include "acknowledgment thereof by the testator and affidavits of the witnesses, each made before an officer authorized to administer oaths under the laws of the state where execution occurs and evidenced by the officer's certificate, under official seal[.]" N.C. Gen. Stat. § 31-11.6(a). A valid acknowledgment, according to Caveator, requires the person to be either "personally known" to the notary or to be identified through the use of "satisfactory evidence." N.C. Gen. Stat. § 10B-3(1)(b). "Satisfactory evidence" is defined in N.C. Gen. Stat. § 10B-3(22) as "[a]t least one current document issued by a federal, state or state-recognized tribal agency bearing the photographic image of the individual's face and either the signature or a physical description of the individual." According to Caveator, the affidavit of the notary who witnessed the 20 February 2006 will does not state whether she asked Decedent for any of the types of identification required by statute or "administered any oaths or affirmations to persons accompanying [Decedent] who would identify him as" Decedent.

Although Caveator contends that the failure of the notary's affidavit to address the identification question raises an issue of fact sufficient to defeat Propounders' summary judgment motion, we are not persuaded by his logic. The acknowledgment and oath utilized in the 20 February 2006 will are in substantial compliance with the forms set out in N.C. Gen. Stat. § 31-11.6(a). The fact that the notary's affidavit is silent as to whether Decedent was personally known to the notary or produced "satisfactory evidence" of his identity does not show a lack of compliance with N.C. Gen. Stat. § 10B-3(1)(b) given that the issues of personal knowledge or "satisfactory evidence" are simply not addressed in that affidavit. Were we to hold that a genuine issue of material fact as to the validity of the 20 February 2006 will arose from the failure of the notary's affidavit to address the identification issue, no self-proved will would be sufficient to support and sustain a summary judgment motion in a caveat proceeding. Such a result is inconsistent with the very concept of a self-proved will. As a result, the trial court properly granted summary judgment in Executors' favor on the execution issue.

### 3. Undue Influence

The Supreme Court has defined "undue influence" as:

something operating upon the mind of the person whose act is called in judgment, of sufficient controlling effect to destroy free agency and to render the instrument, brought in question, not

properly an expression of the wishes of the maker, but rather the expression of the will of another. "It is the substitution of the mind of the person exercising the influence for the mind of the testator, causing him to make a will which he otherwise would not have made."

In short, undue influence, which justifies the setting aside of a will, is a fraudulent influence, or such an overpowering influence as amounts to a legal wrong. It is close akin to coercion produced by importunity, or by a silent, resistless power, exercised by the strong over the weak, which could not be resisted, so that the end reached is tantamount to the effect produced by the use of fear or force.

*In re Will of Jones*, 362 N.C. 569, 574, 669 S.E.2d 572, 574 (2008), (quoting *In re Will of Turnage*, 208 N.C. 130, 132, 179 S.E. 332, 333 (1935)). "The four general elements of undue influence are: (1) decedent is subject to influence, (2) beneficiary has an opportunity to exert influence, (3) beneficiary has a disposition to exert influence, and (4) the resulting will indicates undue influence." *In re Will of Smith*, 158 N.C. App. 722, 726, 582 S.E.2d 356, 359 (2003). "[U]ndue influence is generally proved by a number of facts, each one of which standing alone may be of little weight, but taken collectively may satisfy a rational mind of its existence." *Hardee v. Hardee*, 309 N.C. 753, 757, 309 S.E.2d 243, 246 (1983) (citation and quotation marks omitted). Seven factors are traditionally considered in evaluating whether undue influence occurred, including:

1. Old age and physical and mental weakness.

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.

3. That others have little or no opportunity to see him.

4. That the will is different from and revokes a prior will.

5. That it is made in favor of one with whom there are no ties of blood.

6. That it disinherits the natural objects of his bounty.

7. That the beneficiary has procured its execution.

*In re Will of Andrews*, 299 N.C. 52, 55, 261 S.E.2d 198, 200 (1980) (quoting *In re Will of Mueller*, 170 N.C. 28, 30, 86 S.E. 719, 720

(1915)). A caveator need not demonstrate the existence of every factor named in *Will of Andrews* in order to prove undue influence. *In re Estate of Forrest*, 66 N.C. App. 222, 225, 311 S.E.2d 341, 343, *aff'd and remanded*, 311 N.C. 298, 316 S.E.2d 55 (1984). Instead, there is a "need to apply and weigh each factor in light of the differing factual setting of each case." *Will of Jones*, 362 N.C. at 575, 669 S.E.2d at 578. If a reasonable mind could infer from such evidence that the purported last will and testament is not the product of the testator's "free and unconstrained act," but is rather the result of "overpowering influence . . . sufficient to overcome [the] testator's free will and agency," then "the case must be submitted to the jury" for its consideration. *Will of Andrews*, 299 N.C. at 56, 261 S.E.2d at 200. Such a determination requires us to "engag[e] in a heavily fact-specific inquiry." *Will of Jones*, 362 N.C. at 575, 669 S.E.2d at 577.

In contending that the trial court erred by granting summary judgment in favor of Executors on the undue influence issue, Caveator argues that, at the time the 20 February 2006 will was executed, Decedent was 96 years old, distraught over his wife's death, depressed, in poor health, hard of hearing, and suicidal. In addition, Dr. Dale Bieber indicated in his affidavit that, as of May, 2004, Decedent "demonstrated a tendency to depression and anxiety;" that," [a]t that time," his "depressive symptoms included talking about his life ending, talking about going to sleep and not waking up," and "express[ing] some suicidal thoughts; and that the Ativan that had been prescribed for Decedent's "distress and agitation often has a tendency to disorient." As of 28 February 2006, a colleague of Dr. Bieber's noted that Decedent "demonstrated passive suicidal tendencies, in other words he didn't care whether his life continued." According to Dr. Bieber, Decedent "was susceptible to the influence of others and relied on others for constant care toward the end of his treatment" due to his "constant depressive state." However, while Decedent's advanced age is undisputed, medical records stemming from a hospital visit on 19 February 2006 indicate that he was "alert" and "oriented X 3." Furthermore, the affidavit of the attorney who drafted the 20 February 2006 will stated that, despite his age, Decedent was in command of his mental faculties. Thus, although Caveator's evidentiary forecast does suggest that Decedent suffered from difficulties associated with extreme old age, none of the evidence forecast by Caveator tends to show that Decedent's condition resulted in his will actually being overborne at the time that the 20 February 2006 will was executed.

Secondly, Caveator argues "that others have [had] little or no opportunity to see" Decedent. According to Caveator, Executors removed Decedent from his residence, obtained exclusive control over him, and prevented Caveator from visiting him. However, the record reveals that the majority of the period during which Caveator claims to have been denied access to Decedent occurred after the execution of the 20 February 2006 will. Executors made initial contact with Decedent on 19 February 2006, some twenty-four hours prior to the execution of the 20 February 2006 will. During the period between Executors' initial contact with Decedent and the execution of the 20 February 2006 will, Decedent visited the hospital and consulted two different attorneys in two separate offices. In this same general time frame, Decedent informed law enforcement officers that "he was scared of [Caveator] and thought he was going to try and kill him." As a result, the undisputed evidence indicates that Decedent was in regular contact with people other than Executors during the time prior to the execution of the 20 February 2006 will and expressly indicated to such persons that he did not wish to have contact with Caveator.

Thirdly, Caveator argues that "the [20 February 2006] will is different [from] and revokes a prior will." While Caveator's statement is accurate, an affidavit by the drafter of the 20 February 2006 will explains that Decedent "stated quite adamantly that he wanted to draw up a new Will in order to take [Caveator] out of his Will." According to the drafting attorney, this statement was made out of the presence of Executors. Thus, the undisputed evidence concerning the actual drafting of the 20 February 2006 will establishes that the decision to change the terms of Decedent's estate plan resulted from Decedent's unhappiness with specific perceived deficiencies in Caveator's conduct and that Decedent expressed this sentiment out of Executors' presence.

In addition, Caveator argues that the 20 February 2006 "will disinherits the natural objects of his bounty." Admittedly, Caveator was Decedent's adopted grandson. However, the beneficiaries of the 20 February 2006 Will were Decedent's relatives as well. Both Caveator and the beneficiaries under the 20 February 2006 will were natural objects of decedent's bounty.

Finally, Caveator submits that Executors procured the execution of the will. In support of this assertion, Caveator relies on a statement in Dr. Bieber's affidavit that, "d]ue to [Decedent's] consistent depressive state, he was susceptible to the influence of others and relied on

others for constant care toward the end of his treatment." The record indicates, however, that Dr. Bieber merely spoke of "tendencies" and that he had no personal knowledge of the events that occurred at the time that the 20 February 2006 will was executed. All of the evidence concerning Decedent's attitudes at the time that the 20 February 2006 will was executed indicate that Decedent acted in accordance with his own preferences. At the time the disputed will was executed, Decedent had only been in the presence of Propounders for a twenty-four hour period. During that interval, Decedent "clearly and cogently" expressed his desire to disinherit Caveator outside Executors' presence and met with the drafting attorney and his staff outside Executors' presence. Caveator points to no evidence suggesting that the Executors in fact procured the will.

As a result, although Caveator argues that five of the seven evidentiary factors set out in *Will of Andrews* exist in this case, we disagree with his analysis. As we have already noted, the fact that Decedent was elderly should not obscure the fact that the record contains no evidence suggesting that his will was actually overborne, that many people not aligned with Executors saw and communicated with Decedent during the hours surrounding the execution of the 20 February 2006 will, that a number of people heard Decedent expressly state that he wished to disinherit Caveator due to dissatisfaction with his conduct, and that the alleged isolation of Decedent by Executors occurred after the execution of the 20 February 2006 will. At bottom, the fundamental problem with Caveator's argument is that he has presented no evidence concerning the events that occurred immediately prior to, at the time of, or immediately after the execution of the 20 February 2006 will that has the effect of countering the evidentiary forecast submitted by Executors to the effect that Decedent's decision to execute the 20 February 2006 will was his free and voluntary choice motivated, at least in part, by his unhappiness with the treatment he had received at the hands of Caveator. The present record simply lacks the sort of evidence upon which the Supreme Court relied in finding the evidentiary forecast relating to the undue influence issue in *Will of Jones* sufficient to withstand a summary judgment motion, such as the testator's complete dependence on the propounder wife in the weeks leading up to the execution of the disputed will, the wife's constant surveillance of the testator's communications with others, the wife's failure to let the attorney who drafted the prior will communicate with the testator, the wife's repeated expressions of dissatisfaction with the prior will, and statements by the testator suggesting that his resistance to changing his will in accordance with

his wife's desires was weakening. 362 N.C. at 579-82, 669 S.E.2d at 579-82. As a result, the record amply supports the trial court's decision to grant summary judgment in favor of Propounders with respect to the undue influence issue. *In re Will of Mason*, 168 N.C. App. at 165, 606 S.E.2d at 924 (holding that summary judgment may be granted in appropriate instances in caveat proceedings).

## III. Conclusion

Thus, we conclude that Judge Stephens had the authority to consider the imposition of sanctions pursuant to N.C. Gen. Stat. 1A-1, Rule 11 against Caveator for filing the revocation petition and that his order sanctioning Caveator for filing the revocation petition because it was not well-grounded in law should be affirmed. In addition, we conclude that Judge Fox correctly granted summary judgment in favor of Propounders in the caveat proceeding. As a result, the orders entered below are affirmed.

AFFIRMED.

Judges GEER and STROUD concur.